SAUTTER *v.* NEY.

1. FRAUD—INDUCEMENT—NEGLIGENCE OF PLAINTIFF.

A cause of action for fraud in the inducement of the purchase of property by means of allegation that plaintiff had timely knowledge of the fact he says was falsely represented will not be defeated by proof of negligence on the part of plaintiff.

2. SAME—MISREPRESENTATION—MATERIALITY—RELIANCE—EVIDENCE.

Once the misrepresentation and its materiality have been proven in an action for fraud, the defendant has the burden of proving that the plaintiff's knowledge was so informatively and timely complete as to render the allegation of reliance quite as false as the representation itself.

3. SAME—MISREPRESENTATIONS—RELIANCE—BURDEN OF PROOF—EVIDENCE.

Defendants in suit for rescission of contract to purchase motel property *held,* not to have sustained their burden of proof that plaintiffs had not relied on misrepresentations as to income made by defendants, where such books and records as were shown did not disclose all of the information upon which plaintiffs had relied.

Appeal from Huron; Bach (Arthur M.), J. Submitted October 11, 1961. (Docket No. 55, Calendar No. 49,405.) Decided December 28, 1961. Rehearing denied March 15, 1962.

Bill by George Sautter and Elizabeth M. Sautter against John Ney, Robert Smith, Harold Munth, Samuel Kling, and others for rescission of contract

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 24 Am Jur, Fraud and Deceit § 206.
[2] 24 Am Jur, Fraud and Deceit § 255.
[3] 24 Am Jur, Fraud and Deceit § 278 *et seq.*

for purchase of motel.   Decree for plaintiffs.   Defendants appeal.   Affirmed.

*Atkins & Drillock,* for plaintiffs.

*James F. Woodworth (John L. Potter,* of counsel), for defendants.

BLACK, J.   Defendants, owners of a motel adjacent to highway M-53 near Bad Axe, listed it with broker Robert Walker for sale at the price of $85,000.   Following negotiations with Walker and certain of the defendants, plaintiffs purchased the motel and the premises thereof at the listed figure, paying $28,500 down and agreeing by executory contract to pay the balance by monthly instalment.

The contract was executed, and plaintiffs went into possession, November 12, 1958.   Some 6 months later, being dissatisfied with the gross business done by them compared to presently considered representation, plaintiffs demanded of defendants "the books and income tax returns" to determine the gross business defendants had done in recent years.   Shortly after, they commenced this suit for rescission, alleging fraud in the inducement.

The case was heard fully on pleadings and proofs. Judge Bach concluded, in a carefully drawn opinion, that plaintiffs had been defrauded as alleged.   Rescission and related relief was decreed accordingly. Defendants appeal.

The ultimate fact of inducing representation by defendants and their broker, that the motel had grossed—in the 2 most recent years—income at the approximate rate of $21,000 per year, was established preponderantly.   Defendants raise no question in such regard.   They do say plaintiffs actually learned, prior to execution of the mentioned contract, that the gross income from the motel—during such

years—amounted to less than $17,000 per year. On such premise defendants contend that plaintiffs did not rely on the aforesaid representation and so were not deceived.

The issue as briefed and argued reduces its scope to variant inferences drawn from plaintiff George Sautter's testimony. Each counsel, in brief and appendix, refers to separate portions of such testimony.

That part of Mr. Sautter's testimony, upon which defendants rely, was elicited on cross-examination:

"*Q.* So that you knew, or were told at that time by one of the owners, the manager, that the books, the records, show $13,750 for 9 months; you knew that?

"*A.* Yes, I said that.

"*Q.* And you still went on with the transaction?

"*A.* I wanted to pull out.

"*Q.* But you didn't; you went on with the transaction?

"*A.* Yes."

Plaintiffs in turn refer to other testimony of Mr. Sautter to effect that he was shown, prior to signing of the executory contract, no "books" or "records"; that he actually was shown only a "sheet of paper with the 9 months on it." The sheet disclosed a "gross of $13,750" (not for the year but for 9 months thereof). They point further to Mr. Sautter's testimony that, when he questioned defendant Samuel Kling about the 9-month portion of business so disclosed, "Sam said that's the figures we used for income tax purposes." Plaintiffs also refer to certain portions of the transcript, not included in either appendix, tending to establish that they did not learn the true facts concerning business previously done until, some 6 months after they had taken possession and proceeded with the business, defendants and Mr. Walker were pressed to reveal what the chancellor found. Here is the pertinent portion of Judge Bach's opinion:

"Plaintiff asked 3 or 4 times for the income tax returns and books, but they never were produced. Although the preliminary agreement was signed in October at which time plaintiff deposited $5,000 down and before the final agreement was signed on November 12, 1958, plaintiffs went to the motel and were shown a receipt book showing a gross income of $13,750 for the first 9 months of 1957. Plaintiff wanted his money back. Walker said he would try to get his money back. The owners, defendants and Walker got together on November 5th or 6th and the next day Walker told him again and reassured him that there was $5,000 of receipts not shown on the books and that Walker had seen the $150 a month checks passed out to the owners and they got the checks every month. Walker also told him he, Walker, could sell the motel for him if he, plaintiff, didn't like it, for $100,000. In January of 1959 plaintiff found that little money was coming in and asked defendant Kling to come out to the motel. Defendant Kling then told him that the owners did not get $150 every month, but only some months. In April plaintiff saw that he could not equal the figures of Walker and called him. Walker told him the figures were what the defendants gave him. Plaintiff demanded the books and was told he could have them, but it took some time and effort on plaintiff's part until he finally obtained the books. He then discovered that the net for 1957 was only $2,060.50 and gave each partner (couple, husband and wife) $515.12 for the year and that the business grossed less than $17,000 per year."

The presented question has come before this Court on frequent occasions and variant facts. To defeat an otherwise righteous cause for fraud, by means of allegation that the plaintiff had timely knowledge of the fact he says was falsely represented, proof of negligence on his part will not suffice. The representation and its materiality proven, it must be shown that the plaintiff's knowledge was so inform-

atively complete as to render the allegation of reliance quite as false as the representation itself. Starting with the leading and steadily cited case of *Eaton* v. *Winnie,* 20 Mich 156 (4 Am Rep 377), and continuing through *Matteson* v. *Weaver,* 229 Mich 495, 499, the rule is settled that (quotation from *Eaton,* p 166):

"Where one assumes to have knowledge upon a subject of which another may well be ignorant, and knowingly makes false statements regarding it upon which the other relies, to his injury, we do not think it lies with him to say that the party who took his word and relied upon it as that of an honest and truthful man, was guilty of negligence in so doing, as to be precluded from recovering compensation for the injury which was inflicted upon him under cover of the falsehood. If a party's own wrongful act has brought another into peril, he is not at liberty to impute the consequences of his acts to a want of vigilance in the injured party, when his own conduct and untruthful assertions have deprived the other of that quality and produced a false sense of security."

In the disclosed circumstances of this case defendants bore below and bear here the burden of persuasion that plaintiffs' knowledge of the falsity of their representation was both timely and complete. The chancellor was not convinced, nor are we, that defendants have carried such burden. See the like case of *Johnson* v. *Campbell,* 199 Mich 186, where the ultimate facts were much the same as here. Even if plaintiffs were shown, prior to signing of the contract, certain "books" of the business which disclosed material facts as in the *Johnson Case* (which we do not hold or affirm), that alone would not acquit the defendants. As in *Johnson,* other and additional facts, outlined above, warranted Judge Bach's finding that the knowledge of plaintiffs was not complete and that they did in fact rely upon those who

possessed superior and personal knowledge of that which was represented to plaintiffs in the inducement.

No other question requires discussion. Decree affirmed, with costs to plaintiffs.

DETHMERS, C. J., and CARR, KELLY, EDWARDS, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.