PAPIN *v.* DEMSKI

1. FRAUD—ACTIONABLE FRAUD—ELEMENTS—BURDEN OF PERSUASION.
   Plaintiff must, in order to succeed in an action based on fraud,
   bear the burden of showing that defendant made a material
   misrepresentation, that it was false, that when he made it he
   knew it was false or made it recklessly and without any knowl-
   edge of its truth, that he made it with the intention that it
   should be acted upon by plaintiff, that plaintiff acted in re-
   liance upon it, and that plaintiff thereby suffered injury.

2. APPEAL AND ERROR—EQUITY—SCOPE OF REVIEW.
   An appellate court must review all the proceedings in the court
   below when hearing an appeal of an action in which an equi-
   table remedy is sought.

3. FRAUD—MISREPRESENTATION—MATERIALITY.
   A misrepresentation need not relate to the sole or major reason
   for a transaction taking place in order to be a material mis-
   representation; it only needs to relate to a material or im-
   portant fact.

4. FRAUD—MISREPRESENTATION—MATERIALITY.
   Defendant's representation that a motel business which he was
   trying to sell to plaintiff had made a profit of $19,000 in a
   given year, when in fact the profit had been only $10,000, *held*,
   a material misrepresentation where the plaintiff would have to
   pay approximately $15,000 yearly in interest and principal on
   purchase money debt under the contract of sale, even though
   it could well be argued that plaintiff's principal reason for

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur 2d, Fraud and Deceit §§ 12–19, 437–449.
[2] 27 Am Jur 2d, Equity §§ 266, 267.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 177–181.
[4] 37 Am Jur 2d, Fraud and Deceit § 179.
[5] 37 Am Jur 2d, Fraud and Deceit §§ 198, 201–209, **217.**
[6] 37 Am Jur 2d, Burden of Proof §§ 236, 248.

buying the business was the opportunity to purchase for $200,-
000 a business establishment built less than ten years before
for $350,000.

5. FRAUD—MISREPRESENTATION—KNOWLEDGE—REPRESENTATION MADE
WITHOUT KNOWLEDGE.

Proof that defendant knew that his representation was false is
not necessary in order for plaintiff to succeed in an action
for fraud, as long as he can prove that defendant made a false
representation recklessly, and without any knowledge of its
truth.

6. FRAUD—MISREPRESENTATION—RELIANCE—BURDEN.

Plaintiff does not owe defendant an obligation to use diligence
to discover fraud; once the plaintiff has proved a misrepre-
sentation and its materiality, the burden of proof shifts to
defendant to prove plaintiff's allegation of reliance is as false
as the representation.

Appeal from Bay, Leon R. Dardas, J. Submitted
Division 3 March 13, 1969, at Grand Rapids.
(Docket No. 4,566.) Decided April 23, 1969. Leave
to appeal granted August 5, 1969. See 382 Mich 772.

Complaint by Gerald J. Papin and Delpha M.
Papin, his wife, against George S. Demski, and
Mary Jane Demski, his wife, for rescission of
a contract to purchase a business. Arthur R.
Ditzik, doing business as Tyler Realty and In-
vestment Company, and Austin R. Keathley
were brought in as third-party defendants by the
Demskis. Counterclaim by the Demskis against
plaintiffs for foreclosure of the contract. Third-
party complaint dismissed and judgment rendered
for defendants on counterclaim. Plaintiffs appeal.
Reversed and remanded.

*Lacey & Jones* (*E. R. Whinham, Jr.,* of counsel),
for plaintiffs.

*Smith, Brooker, Harvey & Cook,* for defendants.

BEFORE: McGREGOR, P. J., and R. B. BURNS and DANHOF, JJ.

DANHOF, J. Plaintiffs Gerald and Delpha Papin purchased a business known as the Mackinac Trail House, a combination motel, restaurant, snack bar and cocktail lounge in Pinconning, Michigan, on August 4, 1966. Defendants George and Mary Jane Demski were the vendors.

On June 20, 1967 plaintiffs brought suit seeking to enjoin defendants from transferring or enforcing any of the several agreements entered into regarding the sale of the Mackinac Trail House, praying for rescission of the agreements and restitution of sums expended because of the sale, and for damages as a result of breach of contract.

The basis for seeking such relief was that the plaintiffs were furnished by the defendants a statement of cash income and expenses for the Mackinac Trail House for the year 1965 that was in error in that it substantially understated the costs and expenses, and that plaintiffs relied upon the statement in entering into the agreements of August 4, 1966.

The trial court issued a temporary restraining order on the date suit was filed, and a show-cause hearing was held on June 29, 1967, at which time defendants were restrained from enforcing any rights under the agreements except in the trial court.

The defendants then filed a counterclaim seeking foreclosure of certain of the agreements of the sale of August 4, 1966, and in addition brought a third-party complaint against Arthur Ditzik, doing business as Tyler Realty and Investment Company, and Austin R. Keathley, the real estate brokerage company and salesman who handled the sale.

By agreement of the parties, plaintiffs added a count of breach of warranty to their complaint and defendants amended their counterclaim to include a claim for the commission paid the broker.

At the trial it was established and was undisputed that the statement of cash income and expenses given to plaintiffs by defendants' agents was substantially in error because of omissions of cost and expense items. The error was consummated in an erroneous statement labeled:

"Profit (or cash flow)–$19,197.87."

An accurate reflection of the account books of the Mackinac Trail House for the year 1965 would have been $10,735.48, or a difference of $8,462.39.

At the conclusion of the trial, the court found that the defendants were entitled to foreclosure and dismissed their third-party complaint.

Plaintiffs filed a motion for reconsideration asking for a decision on their claim of breach of warranty and a determination that the decision made was contrary to a clear preponderance of the evidence and applied an improper standard of law.

On November 20, 1967 arguments were heard on the motion and it was denied.

Initially, the burden of proof in this case, as always, was on the plaintiffs. It was essential to their cause of action based on fraud that certain facts be established. Our Supreme Court in *A & A Asphalt Paving Company* v. *Pontiac Speedway, Inc.* (1961), 363 Mich 634, 639, quoted with approval the following statement relative to the essential facts:

"The general rule is that to constitute actionable fraud it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or

made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery."

Since the plaintiffs seek the equitable relief of rescission and restitution, this appellate court must review all the proceedings in the court below. *Thomas* v. *Whyte* (1966), 5 Mich App 281.

We address ourselves now to the first fact that plaintiffs had to prove, namely, that defendants made a material misrepresentation. During the course of the negotiations for the sale, plaintiffs were given a statement of income and expenses for the year 1965 which was incomplete and inaccurate in that it showed a profit (or cash flow) of $19,197.87 when in fact if all the expenses had been deducted this figure would have been changed by $8,462.39 resulting in a profit (or cash flow) of only $10,735.48. The most persuasive proof of the materiality of this misrepresentation was the fact that the plaintiffs would have to pay approximately $15,000 yearly in interest and principal on their purchase money debt.

Defendants argue that their misrepresentation, if any, was not material because the inducement for the purchase was the opportunity for plaintiffs to buy the Mackinac Trail House, built for $350,000 in 1961, at the bargain sale price of $200,000. This Court does not conceive the test of materiality as requiring that the misrepresentation relate to the sole or major reason for the transaction, but only that it relate to a material or important fact. That plaintiffs may have thought **they** were getting the

Mackinac Trail House at a bargain price does not preclude there being other material facts, such as the yearly profits of the business, as to which there may have been a material misrepresentation.

With regard to the second element of fraud, the falsity of a material misrepresentation, there is no real issue as the falsity of the statement of income and expenses was clearly established. In fact, much of the trial testimony related to whether the falsity had been cured by a subsequent opportunity on the part of the plaintiffs to examine accurate books.

Turning now to the third essential fact of fraud, that when it was made, the defendants knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion, it was not necessary for plaintiffs to prove that defendants knew the statement was false at the time it was given to plaintiffs. As long ago as 1866, Justice Cooley, speaking for a unanimous court, said in *Converse* v. *Blumrich* (1866), 14 Mich 108, 123:

"If one obtains the property of another, by means of untrue statements, though in ignorance of their falsity, he must be held responsible as for a legal fraud."

It was enough for plaintiffs to prove that defendants made the false representation recklessly, without any knowledge of its truth and as a positive assertion. This burden of proof plaintiffs sustained when they showed that the assertion was contained in one of the documents presented by defendants' agent to plaintiffs in an effort to induce plaintiffs to buy the Mackinac Trail House. The foregoing proof also supported the fourth element of fraud as set forth in *A & A Asphalt* v. *Pontiac Speedway, supra,* namely, that defendants made it with the intention that it should be acted upon by plaintiffs.

Additionally, George Demski's own testimony leaves any claim of his innocence as to the false representation doubtful, as he testified that he signed an agreement to purchase that had attached to it the false statement purporting to show a profit of $19,197.87, and then testified further that during the years of his entire operation of the Mackinac Trail House he never made a nickel, and that he took the losses his business sustained to reduce his income tax.

We consider now the fifth element of fraud, that plaintiffs acted in reliance upon a material misrepresentation. This is the crux of this case with plaintiffs arguing that the burden of establishing that there was no reliance upon the misrepresentation was upon defendants who made the misrepresentation, citing *Smith* v. *Werkheiser* (1908), 152 Mich 177 (15 LRA[NS] 1092), and *Sautter* v. *Ney* (1961), 365 Mich 360, and the defendants arguing that the plaintiffs' prior business experience as motel owners, and their access to books which were accurate, plus their desire to buy the business at a bargain price, proved that the defendants had carried the burden of proof that there was no reliance, as required by *Sautter* v. *Ney.*

In the case of *Smith* v. *Werkheiser, supra,* which is factually close to the instant case, defendant sold a newspaper to plaintiffs based upon certain false representations, one of which was that the newspaper had a circulation of 4,000 when in actuality its circulation was 2,500. In spite of the false representations, plaintiffs chose to keep the property. In a subsequent foreclosure suit, the original defense was raised. On appeal defendant argued that complainants had placed no reliance upon their misrepresentation, but instead relied upon an examination of the books which contained a correct statement of

the circulation. The Court rejected defendants' argument in the following language at p 180:

"In short, we are bound to say that their examination of the books did not lead complainants to discredit the false statements made to them. It is urged that inasmuch as the books were placed at their disposal complainants were bound to ascertain the truth and to place no reliance upon the false statements that had been made to them. This is not the law. A defrauded party does not owe to the party who defrauds him an obligation to use diligence to discover the fraud. *Smith* v. *McDonald* (1905), 139 Mich 225; *Bristol* v. *Braidwood* (1873), 28 Mich 191. We are therefore of the opinion that it must be said that complainants did rely upon the false representations and that they did therefore have a cause of action against the members of the firm of W. H. Werkheiser & Sons for the alleged fraud."

The more recent case of *Sautter* v. *Ney, supra,* concerned the sale of a motel. Defendants, the owners, listed it with a broker for sale at $85,000. Plaintiffs, the purchasers, paid $28,500 down and agreed by executory contract to pay the balance by monthly installments. Six months later plaintiffs demanded to see the books in order to determine the gross business done by defendants in past years. Shortly thereafter, they commenced suit for rescission, alleging fraud in the inducement. Plaintiffs won in the lower court and were allowed to rescind the contract. On appeal, the Supreme Court concluded that the plaintiffs relied on the representation of defendants and their broker that the motel grossed approximately $21,000 during each of the two previous years despite the defendants' contention that plaintiffs actually learned prior to executing the contract, that the motel grossed only about $17,000 per year, thereby evidencing no reliance upon their repre-

sentation.    The Court, in a unanimous opinion,
stated at pp 363–365:

"To defeat an otherwise righteous cause for
fraud, by means of allegation that the plaintiff had
timely knowledge of the fact he says was falsely
represented, proof of negligence on his part will not
suffice.    The representation and its materiality
proven, it must be shown that the plaintiff's knowl-
edge was so informatively complete as to render the
allegation of reliance quite as false as the repre-
sentation.    The Court, in a unanimous opinion,
steadily cited case of *Eaton* v. *Winnie* (1870), 20
Mich 156 (4 Am Rep 377), and continuing through
*Matteson* v. *Weaver* (1924), 229 Mich 495, 499, the
rule is settled that (quotation from *Eaton,* p 166):
'Where one assumes to have knowledge upon a
subject of which another may well be ignorant, and
knowingly makes false statements regarding it upon
which the other relies, to his injury, we do not think
it lies with him to say that the party who took his
word and relied upon it as that of an honest and
truthful man, was guilty of negligence in so doing,
as to be precluded from recovering compensation
for the injury which was inflicted upon him under
cover of the falsehood.    If a party's own wrongful
act has brought another into peril, he is not at
liberty to impute the consequences of his acts to a
want of vigilance in the injured party, when his own
conduct and untruthful assertions have deprived the
other of that quality and produced a false sense of
security.'
"In the disclosed circumstances of this case de-
fendants bore below and bear here the burden of
persuasion that plaintiffs' knowledge of the falsity
of their representation was both timely and com-
plete.    The chancellor was not convinced, nor are we,
that defendants have carried such burden.    See the
like case of *Johnson* v. *Campbell* (1917), 199 Mich
186, where the ultimate facts were much the same as
here.    Even if plaintiffs were shown, prior to sign-

ing of the contract, certain 'books' of the business which disclosed material facts as in the *Johnson Case* (which we do not hold or affirm), that alone would not acquit the defendants. As in *Johnson*, other and additional facts, outlined above, warranted Judge Bach's finding that the knowledge of plaintiffs was not complete and that they did in fact rely upon those who possessed superior and personal knowledge of that which was represented to plaintiffs in the inducement."

Thus, the test emerging from the cases puts a clear burden on defendants to show that plaintiffs' knowledge was so complete as to make the allegations of reliance by plaintiffs quite as false as the representation itself. Defendants in this case do not cite any cases which contradict this formulation of the law.

Examination of the trial judge's opinion shows that he concluded that due to plaintiffs' prior business experience, they had a duty to make more diligent inquiries. The trial judge stated:

"I think inferences can be made as to a person's knowledge or understanding. A person will normally be presumed to know what would and should be known by an ordinarily informed and prudent person situated like himself. A person who has knowledge of facts which lead an honest and ordinarily cautious man to make further inquiries is presumed to have taken notice of facts that he would readily have ascertained, if he used ordinary diligence and pursued it further. This, they did not do. Representation was made—yes—insofar as the cash flow statement is concerned, but coupled with other facts, it would at least require a further look into it. I am convinced in my own mind, that is why I am making this finding of these things."

This is clearly not the test established in *Smith* v. *Werkheiser, supra* and *Sautter* v. *Ney, supra*.

At the time of the motion for reconsideration, plaintiffs' attorney specifically advised the judge that the foregoing quotation from his opinion indicated that an improper standard had been applied in view of the holding in *Sautter* v. *Ney, supra.*

The court said:

"Maybe I concluded there was a finding of negligence on the part of the Papins, which is not what the court meant to convey.

"The court indicated there was a representation of a cash flow before the accountant's report. It was not *solely* upon this that the Papins relied. Other representations in addition to the cash flow were relied upon—an investigation that they themselves performed was relied upon. The cash flow statement at the time, in February, established it was a cash flow statement. There were ample times—I don't see where this case falls anywhere within *Sautter* v. *Ney.* * * * (Emphasis supplied.)

"Here, I am not too sure there was a false representation or, if there was a false representation, and, if there was, it was not a material fact representation upon which the Papins relied. I think in this case, even if it were allowed, would not fall right within *Sautter* v. *Ney.*

"The representation and its materiality proven, it must be shown that the plaintiff's knowledge was so informatively complete as to render the allegation of reliance quite as false as the representation itself. I think the facts in this case would support just exactly that the allegations relied upon are just as false as the alleged misrepresentation itself and I so find."

From the foregoing statements of the trial court, this Court is unable to determine whether or not the trial judge completely rejected the negligence test he applied at the trial. At first he seems to do so, but then he states that it was not solely upon the representation of cash flow that plaintiffs relied, and

that plaintiffs performed an investigation of their own. Later, he considers the rule in *Sautter* v. *Ney, supra,* and rejects its application to this case, without specifying what rule of law he is following.

The lower court failed to apply accurately the guides set forth by the Supreme Court. Plaintiffs did not owe to the defendants an obligation to use diligence to discover the fraud. *Smith* v. *Werkheiser, supra.* The plaintiffs having proven a misrepresentation and its materiality, the burden of proof then shifted to defendants to prove that plaintiffs' allegation of reliance was as false as the representation *Sautter* v. *Ney, supra.* We hold that defendants did not sustain this burden.

The final element of a cause of action based on fraud is injury, *A & A Asphalt* v. *Pontiac Speedway, supra.* That injury was suffered by plaintiffs is evident when the figures involved in the misrepresentation are compared with the plaintiffs' monthly payments. However, plaintiffs state, and defendants do not deny, that complete restitution cannot be determined on the present state of the record.

The decision of the trial court is reversed and a judgment for the plaintiffs, granting rescission of the contract, will be entered. The matter is remanded to the trial court for the purpose of determining the amount of restitution to be made by defendants (Demskis) to the plaintiffs.

Plaintiffs also filed a claim for damages for breach of warranty. From our examination of the record it appears that the trial court, in view of his opinion in the fraud action, determined the damage claims to be without merit and found for the defendants (Demskis).

However, the record is not clear on this point. Thus, we remand this matter to the trial court for

such further action as may be needed to dispose of this portion of the case.

The third-party plaintiffs, appellees, have not raised on appeal the dismissal of their complaint against the third-party defendants, thus the matter is not before us for decision.

Reversed with costs to plaintiffs.

All concurred.