## PAPIN *v*. DEMSKI.

1. APPEAL AND ERROR—EQUITY—DE NOVO REVIEW—COURT RULES—FINDINGS OF FACT.

An appellate court's power to review a chancery case *de novo* as formerly known and exercised is not in conflict with or has it been altered by the General Court Rules which require that findings of fact shall not be set aside unless clearly erroneous and that in reviewing findings of fact regard be given to the special opportunity of the trial court to judge the credibility of witnesses; the need exists for the trial judge to make careful, considered findings of fact (GCR 1963, 517.1).

2. FRAUD—FALSE REPRESENTATION—EVIDENCE—FINDINGS OF FACT—ADMISSIONS.

Trial judge erred in failing to find that there was a false representation by the sellers on the sale of property on which a motel business was conducted where they admitted that the written income statement furnished by them to the purchasers

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 822.
[2] 37 Am Jur 2d, Fraud and Deceit § 182.
[3] 37 Am Jur 2d, Fraud and Deceit §§ 223, 227, 234, 277.
[4] 37 Am Jur 2d, Fraud and Deceit §§ 130, 213.

showed a profit nearly twice the actual profit for the year prior to the sale if the books for the business had been completed.

3. FRAUD — FALSE REPRESENTATION — RELIANCE — EVIDENCE — FINDINGS OF FACT.

Trial judge erred in finding that the purchasers of property on which a motel business was conducted did not rely upon representations by the real estate agent as to the profits of the business for the year prior to the sale where there was testimony that the amount of such profits was used by the purchasers to determine their ability to meet the installment payments on the sale; the real estate agent failed to disclose to the purchasers information in his possession that the operation of the business for the 'second year prior to the sale showed a substantial loss.

4. FRAUD—FALSE REPRESENTATION—BURDEN OF PROOF—EVIDENCE.

Sellers never met their burden of proving that the purchasers' knowledge of the falsity of the statement of income and expenses of a business conducted on the property sold was both timely and complete in an action to rescind the sale where the testimony, viewed in a· light most favorable to the purchasers, at best, did no more than raise a probability that they were given information, at the time an alteration in the sales agreement was made, which would establish that the statement was false and where one of the sellers testified that, while he operated the business, no profits were made, losses were taken for income tax purposes, and none of this was disclosed to the purchasers.

Appeal from Court of Appeals, Division 3, McGregor, P. J., and R. B. Burns and Danhof, JJ., reversing Bay, Leon R. Dardas, J. Submitted March 11, 1970. (Calendar No. 26, Docket No. 52,477.) Decided June 1, 1970.

17 Mich App 151, affirmed.

Complaint by Gerald J. Papin and Delpha M. Papin, his wife, against George S. Demski and Mary Jane Demski, his wife, for rescission of a land contract. Arthur R. Ditzik, doing business as

Tyler Realty and Investment Company, and Austin
R. Keathley were brought in as third-party defend-
ants by the Demskis. Counterclaim by the Demskis
against plaintiff for foreclosure of the contract.
Third-party complaint dismissed and judgment ren-
dered for defendants on counterclaim. Plaintiffs
appealed to the Court of Appeals. Reversed. De-
fendants appeal. Affirmed.

*E. R. Whinham, Jr.,* for plaintiffs.

*Smith & Brooker, P. C.,* for defendants.

ADAMS, J. In 1964, plaintiffs purchased a motel
in Milford, Michigan. Austin R. Keathley was the
real estate agent who sold the motel to them. In
the latter part of 1965 or early 1966, Gerald J.
Papin contacted Keathley, as he was interested in
purchasing another motel. In February 1966,
Keathley showed the Papins the Mackinac Trail
House in Pinconning, Michigan, owned by defend-
ants Demski. Keathley received a letter dated Feb-
ruary 10, 1966, from Ted Beechum, bookkeeper for
the Demskis at the Mackinac Trail House, in which
Beechum supplied financial data for the year 1965.
Following receipt of Beechum's letter, Keathley
prepared a statement of income and expenses which
he gave to the Papins. The statement showed a
profit or cash flow of $19,197.87 for 1965.

The 1965 books for the Mackinac Trail House
were in two sets—the first five months represented
a partnership between George S. Demski and
Athalia Demski, his former wife; the last seven
months represented a partnership between George
S. Demski and his present wife, Mary Jane Demski.
The books were incomplete at the time Beechum
prepared the letter to Keathley because the inde-

pendent accountant had not made all of the entries for the year 1965. Had the books been complete, the profit or cash flow would have been reduced to $10,735.48.

The Mackinac Trail House was built in 1961 for $350,000. The sale price was $200,000. After inspecting the premises and receiving the statement of income and expenses, plaintiffs signed an offer to purchase on March 7, 1966, at their home in Dearborn. The offer to purchase was furnished by Keathley and contained this provision:

"Purchasers reserve the right to examine the books of account of this business. It is understood that the books of account will indicate that the income and expenses are substantially as represented by the attached statement of operations, otherwise the purchasers shall have the right to rescind this agreement and receive forthwith a refund of any deposits given."

Attached to the offer to purchase was a copy of the income statement showing profit or cash flow for 1965 of $19,197.87.

On March 9, 1966, the Papins and Keathley went to Pinconning to meet with the Demskis. At that time, the Demskis signed the offer to purchase. In the executed offer to purchase, dated March 9, 1966, the above-quoted provision with regard to examination of the books of account has been stricken and the following is written in:

"Purchasers have examined the books of account and are satisfied that income and expenses are as represented."

It is disputed as to whether the above alteration took place on March 9, 1966, or on April 28, 1966, when an agreement of purchase and sale was signed by the Papins and the Demskis. It is undisputed

that if the Papins examined the books on March 9, 1966, the information on the books would have been the same as the statement of income and expenses which was given to them by Keathley. Additional entries for 1965, prepared by the independent accountant, had not been received by Beechum at that time.

The offer to purchase was subject to approval by the Michigan Liquor Control Commission of transfer of liquor licenses to the purchasers. Keathley testified with reference to the transfer of the liquor licenses and the examination of the books:

"*Q.* As a matter of fact when the Papins signed the agreement on March 7, you represented to them they would very likely be in there by May?

"*A.* I state to you I did not say that. I discussed with the purchasers the knowledge I have and my opinions based on that but I don't represent to a seller or his purchasers, they will do this or do that.

"*Q.* It was your opinion by May they would be in and operating the Mackinac Trail House?

"*A.* By the end of May—right.

"*Q.* Prior to getting them in there they had to examine the books because without it there wouldn't be any possibility of the liquor license being transferred.

"*A.* That is true.

"*Q.* It was at least contemplated at that time they would examine the books pretty promptly?

"*A.* Yes, sir."

Complications developed in arranging the transfer of the liquor licenses. The Demskis took a trip to Florida shortly after the offer to purchase was executed. It was discovered that the name of Athalia Demski, George S. Demski's former wife, had to be taken off the licenses. Consequently, there was a delay until April 28 in processing the transfer of the licenses to the Papins. On that date,

an agreement to purchase was executed by the Demskis and the Papins. It states:

"That no representation or warranty by the sellers in this agreement, or any written statement nor certificate furnished to the purchasers pursuant hereto or in connection with the transaction contemplated hereby, contains or, to the knowledge and belief of the sellers, will contain any untrue statement of a material fact, or omit or will omit to state a material fact necessary to make the statements contained therein not misleading; it is understood that purchasers have examined the books of account and they are satisfied with the representations as to income and expenses of this business for the year 1965."

Defendants claim that the March 9 agreement was changed on April 28, 1966, to show that the purchasers had examined the books of account because this was required by the Liquor Control Commission to effect the transfer. Robert Basket, Special Investigator for the Liquor Control Commission, investigated the transfer. He testified:

"*Q*. Does the Liquor Control Commission have any policy or desire with regard to whether or not there should be an indication in the contract between the prospective seller and the buyer of a licensed establishment, that the prospective buyer has examined the books of the seller?
"*A*. There is no policy.
"*Q*. No policy?
"*A*. No policy."

The occasion or occasions when the Papins examined the books of account are in dispute. Defendants assert that if the books of account were examined on April 28, 1966, the books would have accurately reflected income and expenses. Plaintiffs claim they examined the books of account on March

9 and that their March 7 offer to purchase was then changed to reflect this fact. There is testimony that the books of account *may* have accurately reflected income and expenses on April 28, 1966 but there is no positive, clear and convincing testimony that such was the case. Whenever the Papins did examine the books—March 9, 1966, or April 28, 1966—the examination was a cursory one. Keathley testified:

"*Q.* What took place there at the Northern Tube Company with you and Mr. Beechum and the Papins?
"*A.* There was an examination of the books.
"*Q.* By whom?
"*A.* By Mr. and Mrs. Papin.
"*Q.* How long did that take—the examination of the books?
"*A.* That could have been anywhere from 10 minutes to 45 minutes. I did not keep track."

The agreement of April 28, 1966 was prepared and executed to submit to the Liquor Control Commission. In the words of Keathley, "The application and agreement dated April 28 were hand delivered to Lansing, April 29."

The purchase was consummated on August 4, 1966, and the Papins went into possession. In May, 1967, Mrs. Papin found copies of old income tax returns and financial statements which, she testified, showed a financial loss in the operation of the Mackinac Trail House during the years just prior to 1965 and which caused her to question the accuracy of the income statement that had been furnished to her and her husband. The Papins consulted an attorney. On June 20, 1967, plaintiffs began this action for rescission and other relief. The trial judge gave judgment for defendants on their cross-bill to foreclose the land contract and

purchase agreement. Proceedings in the trial court are set forth in the opinion of the Court of Appeals ([1969] 17 Mich App 151). The Court of Appeals reversed the trial judge. Defendants applied for leave to appeal to this Court from the decision of the Court of Appeals. We granted leave (382 Mich 772).

Defendants, in their application for leave to appeal to this Court, claim the Court of Appeals acted as a trial court and not as required by GCR 1963, 517.1. The rule provides:

".1. Effect. * * * Findings of fact shall not be set aside unless clearly erroneous. In the application of this principle regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it."

Has the scope of review in chancery cases been limited by the rule? Stated another way—should an appellate court in chancery cases follow Rule 517.1 relating to findings of fact and conclusions of law by the trial court or is it free to disregard the findings and decision of the trial judge and proceed *de novo* as if the case had never been heard and decided by a lower court? We do not regard the above rule as being in conflict with or as having altered an appellate court's *de novo* power in a chancery case as formerly known and exercised.

The rule requires that "regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appeared before it." It is repeatedly stated in our opinions that recognition is given in a chancery case to this special ability of the trial judge. See, for example, *Christine Building Company* v. *City of Troy* (1962), 367 Mich 508, and *Biske* v. *City of Troy* (1969), 381 Mich 611, 613.

What has perhaps not been sufficiently stressed in our opinions is the need for the trial judge to make careful, considered findings of fact rather than shooting from the bench. In this case, as we read the opinion of the Court of Appeals, it gave consideration to the findings of the trial judge, in so far as such findings could be determined but, from its own examination of the evidence, it concluded that the trial judge had clearly erred. We agree.

Two findings are crucial to decision in this case:

1. Was there, in fact, a false representation by defendants as to the expenses of the business for 1965?

2. Did plaintiffs rely on a statement of income and expenses which inaccurately reflected the expenses connected with the business during 1965?

As pointed out by the Court of Appeals, the trial judge stated (p 161):

"Here, I am not too sure there was a false representation or, if there was a false representation, and, if there was, it was not a material fact representation upon which the Papins relied."

There can be no dispute but that a false representation was made. Appellants in their brief in this Court state:

"The profit or cash flow given to the Papins and set forth in Exhibit H was $19,197.87. Had the books been completed, the profit (or cash flow) set forth in Exhibit H would have been approximately $10,735.48."

Consequently, the trial judge erred in failing to find there was a false representation by defendants.

With regard to the question of reliance, Gerald Papin testified:

"*Q.* Was there ever any discussion between you and your wife when Mr. Keathley was present, with regard to how much cash business generated as appeared on Exhibit H?

"*A.* Yes, it was—every time we met each other.

"*Q.* Can you remember what you said to Mr. Keathley and Mr. Keathley said to you?

"*A.* Yes.

"*Q.* What did you say to Mr. Keathley?

"*A.* We had this showed to us $19,000 profit, to us. This is the time we started figuring out how much the payments would be. I believe it figured out $15,000 a year, so from this $15,000 from $19,000, this left roughly $4,000 for us to live on at the Mackinac Trail House besides any work I could probably do there at the Trail House."

Keathley admitted that at the time he was showing the property to the Papins, he had in his possession figures for the operation of the business for 1964, which showed a loss of $17,000 but that he never showed them to plaintiffs because "it never dawned on me—\* \* \* ."

Demski testified that during the years he operated the business he never made a nickel and that for the years 1961 through and including 1965 the excess of cash income over expenses was less than $6,000. He took losses on the business for income tax purposes which his accountant approximated at about $60,000. None of this was disclosed to plaintiffs.

The rule of *Sautter* v. *Ney* (1961), 365 Mich 360, is clearly applicable here (p 364):

"In the disclosed circumstances of this case defendants bore below and bear here the burden of persuasion that plaintiffs' knowledge of the falsity of their representation was both timely and complete."

The statement of the trial judge that this case would not fall within *Sautter* v. *Ney* is clearly erro-

neous.   Defendants never met their burden of proving that the Papins' knowledge of the falsity of the statement of income and expenses was both timely and complete.   Viewed in a light most favorable to defendants, at best the testimony does no more than raise a probability that plaintiffs were given information on April 28, 1966, which would *establish* the statement was false.

The trial judge erred in finding there was no reliance upon the statement by plaintiffs.

The Court of Appeals is affirmed.   Costs to appellees.

T. E. BRENNAN, C. J., and DETHMERS, KELLY, BLACK, T. M. KAVANAGH and T. G. KAVANAGH, JJ., concurred with ADAMS, J.