E. C. NOLAN COMPANY, INC. v STATE OF MICHIGAN

OPINION OF THE COURT

1. FRAUD—ACTIONABLE FRAUD—ELEMENTS.

To constitute actionable fraud it must appear: that the defendant made a material representation; that it was false; that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; that he made it with the intention that it should be acted upon by plaintiff; and that plaintiff acted in reliance upon it and thereby suffered injury.

2. CONTRACTS—HIGHWAY CONTRACTS—FRAUD—MISREPRESENTATION—CONSTRUCTION SITE—TIME SCHEDULE—DELAY—ADDITIONAL EXPENSES.

The State Highway Department knew or should have known that the date of May, 1968 given for the completion of preliminary work on its bridge-lengthening project was tentative at best where it never received a specific date on which the preliminary work would be commenced, it never received assurances of when the work would be completed, and it knew that the third party who was to perform the preliminary work had a small work force and was engaged in another project; therefore, the plaintiff whose bid for the project was accepted was entitled to recover the additional expenses incurred when the project site was not available until April of 1969, where the plaintiff had rightfully relied upon the May, 1968 date when computing its bid.

3. CONTRACTS—HIGHWAY CONTRACTS—AMBIGUITY—DELAYS—THIRD PARTIES—UNREASONABLE DELAYS—INTENTION OF PARTIES.

The State Highway Department was liable to reimburse a contractor for additional expenses due to unreasonable delays in

REFERENCES FOR POINTS IN HEADNOTES

[1] 37 Am Jur 2d, Fraud and Deceit § 12.

[2–4, 6, 7] 64 Am Jur 2d, Public Works and Contracts § 108 et seq.

[5] 20 Am Jur 2d, Courts §§ 82–86.

Power of court to prescribe rules of pleadings, practice, or procedure. 158 ALR 715.

work caused by a third party, although the contract provision was ambiguous on this point, where the contractor entered into the contract with the understanding that it would be compensated for expenses due to unreasonable delays caused by third parties, the department must have intended to assume liability for unreasonable delays of third parties, and it would have been a simple matter to render the contract completely unambiguous if the department had intended to negate all liability for delay.

4. Contracts—Construction Project—Unreasonable Delay.

A delay of 9-1/2 months in a construction project caused by a third party was an unreasonable delay within the meaning of a contract provision where the total contract construction period was only 24 months.

Dissent by Carland, J.

5. Appeal and Error—Judges—Findings of Fact—Court Rules.

*A trial court's findings of fact shall not be set aside unless clearly erroneous (GCR 1963, 517.1).*

6. Fraud—Misrepresentation—Contracts—Highway Contracts— Construction Project—Delay.

*Findings that the State Highway Department had reason to believe the date given for the availability of its construction site was accurate when it invited bids, that it had no prior knowledge of the delay in the preliminary work, and that it acted in good faith under all the facts and circumstances, were not clearly erroneous; therefore the date given for the construction site availability was not a misrepresentation, even though it proved to be inaccurate.*

7. Contracts—Specifications—Highways—Bridges—Priority of Contract Provisions—Additional Expenses—Delays.

*A contract provision that specifications actually stated in the contract shall govern over standard specifications is unambiguous and the court is not at liberty to make a new contract; therefore, a contract clause providing that "no claims for extra compensation will be made on account of the delay of others" governs over the standard specification which disallows additional compensation only for any "reasonable delay" (Standard Specifications for Highway and Bridge Construction, 1967, §§ 1.05.05, 1.05.06).*

Appeal from Court of Claims, James E. Hoff, J.

Submitted Division 3 May 15, 1974, at Lansing. (Docket No. 17681.) Decided February 10, 1975. Leave to appeal applied for.

Complaint by E. C. Nolan Company, Inc., against the State of Michigan and Department of State Highways for extra expenses beyond the contract price of a construction project. Judgment for defendants. Plaintiff appeals. Reversed and remanded.

*Doyle, Smith, Whitmer & Carruthers, P. C.,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Louis J. Caruso* and *Ronald F. Rose,* Assistants Attorney General, for defendants.

Before: DANHOF, P. J., and T. M. BURNS and CARLAND,* JJ.

T. M. BURNS, J. We are here presented with an appeal from the Court of Claims which denied plaintiff's claim in the amount of $125,244.76 for additional expenses beyond the bid price of $1,005,740.43 under a road-construction contract with the state.

On March 20, 1968, the State Highway Department (hereinafter the department) received bids on Project No. U 82143-021, the purpose of which was to lengthen a bridge carrying tracks of the Grand Trunk Railroad (hereinafter the railroad) across Eight Mile Road in the cities of Detroit and Ferndale. Bids were solicited on the basis of a proposal

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

prepared by the department and plaintiff submitted the low bid and was awarded the contract. Thereafter, pursuant to authorization of the department, plaintiff on March 28, 1968, committed $480,000 to have the necessary structural steel fabricated.

It is undisputed that before plaintiff could commence performance, certain railroad tracks on the bridge had to be relocated. The department had accordingly contracted with the railroad on October 8, 1967, to have this work done. When it became apparent that the railroad would require the use of three rather than two tracks during the period of construction, that agreement was modified by mutual consent in December and finally reduced to writing on March 11, 1968. The department in the meantime notified the railroad to proceed on January 4, 1968, and also advised the railroad that the general contract (plaintiff's contract) would be let in March of that year. The trial court found as a fact that the railroad expected to begin relocation in April or May of 1968, and that it was anticipated that once started, the work would be completed within five to seven weeks.

On April 8, 1968, at a pre-construction meeting, the department brought the plaintiff and the railroad together to work up a firm progress schedule for the project. The railroad then for the first time indicated it would be unable to proceed with the preliminary work as scheduled in the proposal and stated that it would not begin to perform said work until September. Despite having knowledge of this announced delay, plaintiff, due in large part to the fact that it had already expended large sums of money in ordering the necessary structural steel and in obtaining the requisite bonding, continued to anticipate performance of its contract

with the department and subsequently signed the contract here in question some 10 days later.

As it turned out, the railroad did not commence work until October 12, 1968, and did not complete its performance until April 1, 1969, a delay found by the trial court to be of 9-1/2 months duration. As a result, plaintiff was unable to fulfill its contract and finish the project until October 23, 1970.

Plaintiff claimed $125,244.76 additional expenses as a result of having to work in the winter rather than the summer and fall. After the Central Office Adjustment Board denied the claim on September 9, 1970, plaintiff filed this suit in the Court of Claims. In its suit, plaintiff alleged both changed conditions on the project site and misrepresentation as to the starting dates by the department. On September 1, 1971, the trial court granted summary judgment in favor of the department on the changed-conditions count, finding that the terms of the contract specifically denied plaintiff the right to recover damages due to a delay caused by another party. After the taking of proofs, the court, on March 7, 1973, issued an opinion in which it found that there was no misrepresentation by the department. Plaintiff's motion for new trial was denied on June 13, 1973, and on July 16, 1973, the court entered judgment on the verdict. Plaintiff now appeals as of right.

Plaintiff first contends that it is entitled to recover the additional expenses incurred by it because of misrepresentations as to the time when the railroad would finish its work, said representations being contained in the department's bid proposals. Plaintiff argues that since it relied on specifications which were a part of the contract and since it suffered damages as a result of such reliance, it is entitled to recover when it is later

determined that such specifications were inaccurate.

In order to recover for fraud or misrepresentation, a plaintiff must establish that the elements of fraud exist. In *Farida v Zahar,* 50 Mich App 137, 142; 212 NW2d 739 (1973), the Court reviewed these elements when it stated:

"The elements of actionable fraud were set forth in *Papin v Demski,* 17 Mich App 151, 154; 169 NW2d 351, 353 (1969):

" 'Initially, the burden of proof in this case, as always, was on the plaintiffs. It was essential to their cause of action based on fraud that certain facts be established. Our Supreme Court in *A & A Asphalt Paving Co v Pontiac Speedway Inc,* 363 Mich 634, 639; 110 NW2d 601, 604 (1961), quoted with approval the following statement relative to the essential facts:

" ' "The general rule is that to constitute actionable fraud, it must appear: (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." ' *(Aff'd,* 383 Mich 561; 177 NW2d 166 [1970])."

The trial court determined that there was no material misrepresentation of fact by the department. We disagree. It was not controverted at trial that the department made representations of a material nature as to the work-progress schedule in the project proposal. That this work-progress schedule, if inaccurate, amounted to a material misrepresentation is also not questioned. Nor is

there any question that plaintiff relied on the representations and expended large sums of money beyond those anticipated. Indeed the only disputed point is whether or not the department knew of the falsity of the work-progress schedule or was without any knowledge upon which to make its representation that the project site would be available in May of 1968.

The department had been carrying on negotiations with the railroad concerning this bridge-lengthening project since 1962. Moreover, at no time did the department ever receive from the railroad a specific date on which the work would be commenced, nor had it ever been assured by the railroad that the work would be completed on a certain date. The department also knew that the railroad had a relatively small work force that was already engaged in a project relating to the Chrysler-Davidson Interchange in Detroit. These facts lead us to conclude that the department knew or should have known that the date given to it by the railroad concerning completion of the preliminary work was tentative at best. Yet, for some unexplained reason, the department chose not to reveal these facts to the bidders, including plaintiff, when it requested bids on the project in question. We are convinced that had plaintiff been informed by the department that the commencement dates of the progress schedule were merely projections and not a certainty, the plaintiff would have evaluated the cost of a possible delay and prepared its bid accordingly to protect itself against any increased costs caused by such delay. However, since plaintiff did not have this information, it was only natural for it to compute its bid on the basis of the facts submitted to it.

The department prepared detailed specifications

for bids and solicited bids on the basis of the proposal that it had prepared. Plaintiff, in computing its bid, had a right to rely on the specifications as true rather than simply thought by the department to be true because there were no other schedules to which plaintiff could have turned in an effort to determine if everything was proper. It necessarily follows that, since this work-progress schedule was at variance with the facts, it was a material misrepresentation. As a result of this misrepresentation, not only was plaintiff misled as to the date it would commence working, but its bid was lower than it would otherwise have been if it had had full knowledge of all the facts. It follows, therefore, that plaintiff is entitled to recover the additional expenses incurred by it because of these misrepresentations.

The next question we must decide is whether the supplemental specifications and coordinating clause in this construction contract insulate the department from liability for delays in completing construction that are traceable to third parties. The plaintiff asserts that the department is only excused from liability when the delays are reasonable, and that since the delay in this case was unreasonable, the department should not be relieved from liability. On the other hand, the department contends that it is insulated from liability for all delays by third parties, whether reasonable or unreasonable.

The 1967 Standard Specifications for Highway and Bridge Construction, which both parties admit to be part of the contract, state at § 1.05.06 in pertinent part:

" * * * No additional compensation will be paid to the contractor for any reasonable delay or inconvenience due to material shortages or *reasonable delays*

*due to the operations of such other parties* doing the work indicated or shown on the plans or in the proposal." (Emphasis added.)

The "coordinating clause" at page 18 of the contract reads in relevant part:

"No claims for extra compensation or adjustments in contract unit prices will be made *on account of delay or failure of others to complete work units as scheduled.*" (Emphasis added.)

It is important to note that this provision lacks any reference to a standard of reasonableness and appears to be contrary to the language quoted above from the Standard Specifications. Plaintiff claims that the supplemental specification creates an ambiguity in the contract which makes it subject to different interpretations. The department counters by arguing that there is no such ambiguity and that any apparent contradiction is resolved by § 1.05.05 of the Standard Specifications which states:

"In case of discrepancy, figured dimensions shall govern over scaled dimensions, plans shall govern over Standard Specifications, supplemental specifications shall govern over Standard Specifications and plans, and special provisions shall govern over supplemental specifications, Standard Specifications and plans."

We are persuaded by plaintiff's argument that the supplemental specification created an ambiguity in the contract making it susceptible of different meanings. It is our opinion that the department was only relieved from liability for reasonable delays caused by third parties. To hold otherwise would be to say that regardless of how long a third party delayed, plaintiff would be required to perform its part of the contract without any hope of reimbursement for any increased costs caused

by the delay. We do not believe the department intended the coordinating clause to so read, for if the effect of that clause were such as the department contends, no responsible contractor would have entered into a contract on this project for the simple reason that the contractor would have no way of knowing how much it could cost it to perform or when it could expect to be finished with the project. A contractor can take a reasonably short delay into consideration when computing its bid on a project, but how could a contractor be expected to submit a competitive bid if it had to include in that bid expenses for a delay that could be of indefinite duration? We submit that a contractor could only compute a competitive bid if it were of the opinion that it would be reimbursed for additional expenses caused by unreasonable delays. It is our conclusion that this is precisely what occurred here. Plaintiff submitted its bid with the understanding that it would be compensated by the department for any additional expenses caused by unreasonable delays attributable to third parties. If the department had actually intended to negate all liability for delay, it would have been a simple matter for it to insert in the coordinating clause the words "whether reasonable or unreasonable" as a modification of "delay", and thus render the provision completely unambiguous. The department did not do so, and we are convinced that the reason it failed to do so was because it did not intend the coordinating clause to so read.

The trial court found that the 9-1/2 month delay was not unreasonable. We disagree. The total contract construction period was only 24 months. A delay of 9-1/2 months, or almost one-half of the total time allowed for the complete project, is in

our view clearly unreasonable and excessive. Since we find the delay to be of unreasonable duration, it follows that the department was not insulated from liability.

Having resolved the first two issues in favor of the plaintiff, we find it unnecessary to consider plaintiff's final issue relating to the doctrine of active interference.

Reversed and remanded.

Danhof, J., concurred.

Carland, J., *(dissenting).* Bids were received by the State Highway Department (department) on Project No. U 82143-021 on March 20, 1968. The purpose of the project was to lengthen a bridge carrying tracks of the Grand Trunk Western Railroad (the railroad) across Eight Mile Road and bids were solicited on the basis of a proposal prepared by the department. Plaintiff E. C. Nolan Company submitted the low bid and was awarded the contract which was signed on April 16, 1968. An attached work schedule, which was a part thereof, called for the plaintiff to commence work on May 11, 1968 and to complete the project by June 7, 1969.

It is conceded that before plaintiff could commence to perform, certain tracks of the railroad had to be relocated. Such relocation was to be performed by the railroad under a separate contract with the department. Negotiations for this work had been going on since 1962. The department finally succeeded in negotiating a contract for the railroad's share of the work in October of 1967. The trial judge found as a fact that the railroad expected to commence relocation in April or May of 1968 and that it was anticipated that once started, the work would be completed within

a period of from five to seven weeks. After the signing of this contract, the railroad determined that it would require the use of three rather than two tracks during the course of construction. The fact that this change might result in delay, while possibly known to the railroad, was never communicated to the department, and on January 4, 1968, the railroad was authorized to commence work and was advised that the general contract (plaintiff's contract) would be let in March of that year.

After being notified that it was low bidder, Nolan was authorized by the department on March 26, 1968 to have the necessary structural steel fabricated and on March 28th, it committed the sum of $480,000 for that purpose.

On April 8, 1968, the department brought the plaintiff and the railroad together to work up a firm progress schedule for the project. The railroad then for the first time announced that it could not begin work before September 1st. Despite having knowledge of this announced delay, the plaintiff signed the contract here in question some ten days later.

The railroad did not commence work until October 12, 1968 and did not complete its contract until April 1, 1969. This the trial court found to be a delay of nine and one-half months. As the result, the plaintiff was unable to fulfill its contract and complete the work thereunder until October 23, 1970.

The plaintiff brought suit for damages in the Court of Claims alleging both changed conditions and misrepresentation as to the starting date by the defendant. On September 1, 1971 the trial court granted summary judgment in favor of the defendant on the changed-conditions count, finding

that the terms of the contract specifically denied to plaintiff the right to damages because of delay caused by another party. After the taking of proofs, the court by opinion dated March 7, 1973, determined that there was no misrepresentation by the defendant. A motion for new trial was denied on June 13, 1973, and judgment entered in favor of the defendant on July 16, 1973. Plaintiff appeals as of right.

The plaintiff first argues that it is entitled to recover the additional expense incurred by it because of the misrepresentations as to the time when the railroad would complete its work, which misrepresentations were contained in the bid proposals of the defendant. In making this argument, the plaintiff asserts that if in reliance upon specifications which are a part of the contract it later suffers damages because of such reliance, it is thereby entitled to recover, if such specifications are later determined to be inaccurate.

I believe that the cases cited by plaintiff in support of this position have no application to the case at bar. *Hersey Gravel Co v State Highway Department,* 305 Mich 333; 9 NW2d 567 (1943); *W H Knapp Co v State Highway Department,* 311 Mich 186; 18 NW2d 421 (1945); *Valentini v City of Adrian,* 347 Mich 530; 79 NW2d 885 (1956), are cases in which the specifications given to the bidder improperly described the type of soil to be encountered in completing the work upon which the bid was based. In *Holloway Construction Co v Michigan,* 44 Mich App 508; 205 NW2d 575 (1973), the Court found deliberate misrepresentation on the part of the state. In the instant case, the alleged incorrect specifications do not pertain to physical conditions surrounding the anticipated performance, but only speak as to the time when

the railroad would perform its contract. The trial court specifically found that defendant had no knowledge that the railroad would not perform on time until the meeting of April 8, 1968, when the railroad announced, both to the defendant and the plaintiff, that it would not commence its work until September. The record does not disclose that the defendant was ever advised that the time for completion would be extended beyond a five to seven week period after the railroad's work was undertaken. It should be noted also that April 8th was some ten days before plaintiff signed the contract and that despite the information received at the meeting, it chose to proceed under the contract.

In *A & A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 638–639; 110 NW2d 601 (1961), Justice THOMAS M. KAVANAGH, writing for the Court, quoted with approval the following from *Marshall v Ullmann,* 335 Mich 66, 73–74; 55 NW2d 731 (1952):

"This Court has recognized that to establish a cause of action based on fraud certain facts are essential. In *Candler v Heigho,* 208 Mich 115, 121; 175 NW 141 (1919), the following statement was quoted with approval from 20 Cyc, p 13:

" ' general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.' "

The trial judge made very detailed findings of fact in both his original opinion and in his opinion denying a new trial. As a result of these findings, the judge determined that there was no misrepresentation of material facts by the defendant:

"I find that although getting the Railroad to commit itself was like trying to stir molasses in January, nevertheless defendant finally succeeded and in good faith contracted with the Railroad for its portion of the work in October, 1967. I find that having committed itself, even the Railroad expected to be in the stage one phase of the construction by April or May of 1968. * * *

"While it is true the Railroad notified defendant on December 15, 1967 that it would require use of three (rather than two) tracks during all stages of construction, Railroad did *not* notify defendant [that] this would cause a delay in the completion of the project. Internally * * * *Railroad* knew that *if* defendant permitted a change in its contract it might cause 'a possible delay in the completion of the project' but Railroad failed to alert the defendant to this possibility. Indeed, defendant transmitted contract work authorizations to Railroad on January 4, 1968, specifically authorizing Railroad to commence *its portion of the work* and told Railroad that the general contract * * * was scheduled to be let in March 1968. * * * I find as a fact that the first time defendant knew or should have known that Railroad was not going to perform as it had agreed was at the pre-construction meeting held April 8, 1968. Railroad announced for the first time it expected to 'move in' * * * about September 1, 1968 rather than as per schedule. * * * I find that this 'bad news' was as much a bombshell to defendant as it was to plaintiff. I further find that defendant had no prior actual notice of this fact nor, acting in good faith under all the facts and circumstances, did defendant have reason to believe this would be the fact when it invited plaintiff to bid on the project."

GCR 1963, 517.1 requiring the trial judge in

actions tried without a jury to make findings of
fact provides:

"Findings of fact shall not be set aside unless clearly
erroneous. In the application of this principle regard
shall be given to the special opportunity of the trial
court to judge the credibility of those witnesses who
appeared before it."

I cannot find from the record the findings of fact
by the trial judge to be against the clear prepon-
derance of the evidence or "clearly erroneous". We
therefore determine there to have been no mate-
rial misrepresentation of fact by the defendant.

The next question to be decided is whether the
supplemental specifications and the coordinating
clause of this construction contract insulate the
defendant from liability for delays in completing
construction that are traceable to third parties.

The trial judge further found: "I am unable to
find that either the initial start up delay of 105
days or the overall delay of nine and one-half
months was a delay protracted to an unreasonable
length of time on a project as big and as complex
as this".

Section 1.05.06 of the 1967 Standard Specifica-
tions which both parties admit is part of the
contract reads in part:

" * * * *  *No additional compensation will be paid* to
the contractor *for any reasonable delay* or inconve-
nience due to material shortages or reasonable delays
*due to the operations of such other parties doing the
work indicated or shown on the plans or in the pro-
posal."* (Emphasis added.)

The "coordinating clause" at page 18 of the con-
tract reads:

"Contracts covering the construction of approach

roadways, utility alterations and railroad work will be in force during the life of this contract. The contractor's attention is called to the requirements of cooperation with others as covered in Article 1.05.06 of the 1967 Standard Specifications.

*"No claims for extra compensation* or adjustments in contract unit prices *will be made on account of delay or failure of others to complete work units as scheduled."* (Emphasis added.)

This passage from the supplemental specifications found in the contract seems to be in direct contradiction to the passage quoted above from the Standard Specifications. The contradiction is, however, resolved by Section 1.05.05 of the Standard Specifications:

"In case of discrepancy, figured dimensions shall govern over scaled dimensions, plans shall govern over Standard Specifications, supplemental specifications shall govern over Standard Specifications and plans, and special provisions shall govern over *supplemental specifications, Standard Specifications and plans."* (Emphasis added.)

The meaning of this paragraph seems clear. If the specifications actually stated in the contract differ from specifications given in the Standard Specifications, the specifications stated in the contract shall control.

This appears to be the contract of the parties and there being no ambiguities unresolved by a reading of the contract in its entirety, I do not feel that we are at liberty to make a new contract.

I find little or no merit to the claim of plaintiff as to "active interference" on the part of the defendant. In its own brief the plaintiff admits that the doctrine of active interference has not

been applied in Michigan under similar circumstances.

In the cases relied upon by plaintiff where active interference was found to exist, it was the state or party with whom the plaintiff had contracted who had caused the delay for which compensation was sought. In the case at bar it was not the defendant but a third party (railroad) which caused the delay.

The plaintiff bases its claim of active interference in the instant case upon the authorization of the state in March of 1968 to purchase the steel to be used on the project. The plaintiff relies upon *American Bridge Co v State of New York,* 245 App Div 535; 283 NYS 577 (1935). There, as in this case, the contractor was awaiting the completion of preliminary work by a third party. The state in miscalculating when such preliminary work would be completed ordered the contractor to purchase the steel needed for the project. The steel arrived and since it could not be used because of the fact that the substructure of the bridge had not been completed, it was necessary that it be stored and painted at the contractor's expense. The damages there sought and recovered were for the expenses incurred in the storing and preservation of the steel, and not because of delay in itself. Here the plaintiff makes no claim that he was damaged by the early ordering of steel but bases his right to recover upon the delays of the railroad.

No one had knowledge on the date of the authorization that the railroad would not perform on time. In *American Bridge, supra,* the state knew or should have known of the incipient delay of the third party.

I would therefore affirm.