WALTER TOEBE & COMPANY v DEPARTMENT OF STATE
HIGHWAYS

Docket No. 76780. Submitted April 16, 1985, at Lansing.—Decided
July 1, 1985. Leave to appeal denied, 424 Mich —.

Plaintiff, Walter Toebe & Company, was awarded a contract to
construct five bridges as part of a highway construction project
of the defendant, Department of State Highways. The project
involved both excavation work, which included the preparation
of bridge sites and the laying of a 24-inch prestressed concrete
watermain line, and the construction of the five bridges. The
bridge work and the excavation work had to be coordinated
since bridge construction was dependent upon the progress of
the excavation work. Plaintiff was awarded the bridge project
contract on February 13, 1974, and was allowed to commence
activity ten days later. The plaintiff was allotted 213 work days
to perform its contractual obligations. Unknown to plaintiff,

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Building and Construction Contracts §§ 47-54.
Contractual provision for per diem payments for delay in perfor-
mance as one for liquidated damages or penalty. 12 ALR4th 891.
Construction contract provision excusing delay caused by "severe
weather". 85 ALR3d 1085.
Prime contractor's liability to subcontractor for delay in perfor-
mance. 16 ALR3d 1252.

[2] Am Jur 2d, Public Works and Contracts §§ 105-136.
See the annotations in the ALR3d/4th Quick Index under Public
Works and Contracts.

[3, 5] Am Jur 2d, Contracts §§ 387-389.
See the annotations in the ALR3d/4th Quick Index under Con-
tracts.

[4] Am Jur 2d, Fraud and Deceit §§ 12-19, 445-449.
Modern status of rules regarding materiality and effect of false
statement by insurance applicant as to previous insurance cancel-
lation or rejection. 66 ALR3d 749.

[6] Am Jur 2d, Interference §§ 14-21.
Liability for interference with invalid or unenforceable contract. 96
ALR3d 1294.

[7] Am Jur 2d, Damages §§ 55-62.
Validity and construction of "no damage" clause with respect to
delay in building or construction contract. 74 ALR3d 187.

sometime after a preconstruction meeting between plaintiff, defendant and Holloway Construction Co., the low bidder on the excavation job, but before plaintiff was awarded the bridge contract, defendant discovered a $965,000 error in the excavation job specifications. Following negotiations with Holloway, a lump-sum settlement of $196,000 was negotiated between Holloway and the defendant. This meant that the usual procedure of awarding related project contracts nearly simultaneously was not followed. The excavation contract was finally awarded to Holloway on April 26, 1974, with a job start date of May 6, 1974, approximately 21 calendar days after the anticipated project start date of April 15. The progress schedule for plaintiff's contract was a Critical Path Network known as CPN 370A which was supplied to all bidders by the defendant and was adopted by plaintiff as its progress schedule. CPN 370A provided for the performance of the scheduled events in terms of work days and not calendar days. Plaintiff completed its contract in 168 of the 213 work days allotted it under the contract. Work was completed on three of the bridges on schedule under the CPN but behind plaintiff's own anticipated schedule. Work on the two other bridges was delayed because Holloway had to special order the pipe for the watermain, an event which had been omitted from CPN 370A. Work on the project was completed on April 12, 1976, eight months after the earliest projected completion date and two weeks before the latest projected completion date. Therefore, although plaintiff planned to start work on certain dates which were not met, the CP Method printout provided by defendant (based upon CPN 370A with the work involved expressed in terms of calendar days) was complied with in substantial part regarding these projects. Plaintiff thereafter brought an action in the Court of Claims based upon breach of contract for the delay in awarding the excavation contract to Holloway. The trial court, Calvin L. Bosman, J., refused to award damages in regard to the three bridges completed on schedule and awarded plaintiff $42,304.19, plus interest and costs, for damages resulting from the delays caused by the omission in CPN 370A of the need for special ordering and fabrication of the watermain pipes necessary for the completion of the other two bridges. Plaintiff appeals alleging that the trial court erred as a matter of law in finding that defendant was not liable for its delay in awarding the excavation contract to Holloway. *Held:*

1. Plaintiff was only entitled to expect that excavation would commence within a reasonable time period. It was not clear error for the trial court to find that a time some 21 days after the beginning of the construction season was reasonable. Defen-

dant's delay was clearly reasonable, was short in duration and was not due to defendant's bad faith.

2. Plaintiff's claim of misrepresentation or fraud was not supported by the evidence.

3. The trial court did not err in finding that defendant did not interfere with plaintiff's work during the period of the contract and that defendant did not breach its site availability and coordination duties.

4. The damages awarded to plaintiff as a result of the failure to include information concerning the installation of the water-main in CPN 370A were proper.

Affirmed.

1. CONTRACTS — DELAYS.

It is foreseeable that reasonable delays may occur in the performance of complex, multi-party construction contracts; a responsible contractor can and should take reasonable delays into consideration in preparing its bid, but should not bear the burden of lengthy or indefinite delays.

2. CONTRACTS — GOVERNMENT CONTRACTS.

Evaluation of a government contract must be made in light of surrounding circumstances and with cognizance of the realistic and legitimate expectations of the parties.

3. CONTRACTS — PERFORMANCE OF CONTRACTS.

A reasonable time for performance of a contract is presumed without reference to parol evidence when a written contract is silent as to the time of performance; what constitutes a reasonable time under the terms and circumstances of a contract is a question of fact.

4. FRAUD — ELEMENTS.

A positive assertion of a material representation by the defendant must be proven by the plaintiff as an element of an actionable fraud.

5. CONTRACTS — COMPLETION DATES.

The specification of a completion or estimated completion date in a contract does not by itself constitute an affirmative representation or warranty that a project will be completed by a certain date.

6. CONTRACTS — INTERFERENCE WITH CONTRACT.

A plaintiff, in order to prevail on a claim of active interference with a contract, must show some affirmative wilful act in bad faith by the defendant which unreasonably interfered with the plaintiff's compliance with the contract.

7. CONTRACTS — BREACH OF CONTRACT — DAMAGES.

    A party to a contract who is injured by another's breach of contract may recover from the latter only those damages which are the direct, natural and proximate result of the breach; the party asserting a breach of contract claim bears the burden of proving its damages with reasonable certainty.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Joseph A. Fink* and *Gregory L. McClelland),* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Patrick McElmurry* and *Brent E. Simmons,* Assistants Attorney General, for defendant.

Before: DANHOF, C.J., and M. J. KELLY and M. E. DODGE,* JJ.

DANHOF, C.J. Plaintiff, Walter Toebe & Company, appeals as of right from a Court of Claims judgment awarding it damages in the amount of $42,304.19, plus costs and interest, for breach of contract. The contract at issue here arose from the following circumstances.

In December, 1973, the state advertised the letting of bids for the construction of a segment approximately one mile in length on I-275 in western Wayne County. The project involved both excavation work, which included the preparation of bridge sites and the laying of a 24-inch prestressed concrete watermain line, and the construction of five bridges. The bridge job involved the construction of one bridge over Palmer Road (S06), two bridges over Cherry Hill Road (B99 and S07), and two bridges over Fellows Creek (B04 and B06). The bridge work and the excavation work had to be coordinated since bridge construction was dependent upon the progress of the excavation work.

    * Circuit judge, sitting on the Court of Appeals by assignment.

In order to assist them in preparing bids, defendant, Department of State Highways, provided responding contractors with project plans and specifications, a form proposal, and a Critical Path Network known as CPN 370A.[1] The final contracts for the two jobs were to be work-day contracts, as opposed to calendar-day contracts, since project work was allocated in terms of the actual number of days "it is possible for the contractor to effectively carry out work", as determined by the state and as reflected on CPN 370A.

Prospective bidders were also provided with a computer printout entitled "CP Method". This printout was based on CPN 370A and was a "translation of the work involved in [the CPN] expressed in calendar dates". The printout contained a detailed breakdown of the entire project with the earliest and latest start and completion dates for each project phase. The earliest projected completion date was August 18, 1975 (as noted on CPN 370A), and the latest projected completion date was April 27, 1976.

With these documents, plaintiff prepared a bid on the bridge construction job which was submitted to the state on January 6, 1974. Based upon the 213 work days allotted the winning bridge construction contractor, and working from the estimated completion date noted on CPN 370A, plaintiff derived calendar dates for scheduling its equipment and crews and then relied on those

[1] A Critical Path Network is a schematic similar to a flowchart which sets forth sequentially all major project tasks and each major event which must be performed in order to complete a project. It provides an estimated number of work days required for each item of work. While it does not set calendar dates for work progress, an estimated project completion date is provided. CPN 370A depicted the sequence of tasks to be performed for both the excavation and the bridge construction jobs and showed how progress on the two jobs would interrelate. It contained an estimated end date of August 15, 1975, for the two jobs.

calendar dates in projecting costs of labor, machinery and materials based upon when and under what circumstances the bridge sites would be accessible and the work would be performed.

Plaintiff was the low bidder on the bridge job, and Holloway Construction Co. was low bidder on the excavation job. On January 31, 1974, representatives of the plaintiff, the defendant and Holloway attended a preconstruction meeting at which various project details were settled upon before the final award of contracts. Plaintiff submitted CPN 370A as its progress schedule and it was approved by defendant as the project schedule for the final contract.

Plaintiff was awarded the bridge project contract on February 13, 1974, and was allowed to commence activity ten days later. Unknown to plaintiff, however, and sometime after the preconstruction meeting but before plaintiff was awarded the bridge contract, defendant discovered an error in the excavation job specifications it had sent to bidders on the excavation project in an amount estimated at approximately $965,000. As a result of the error, defendant was faced with the option of either reletting the excavation job or delaying the award and entering into negotiations with Holloway over the item. Defendant elected to negotiate with Holloway for a lump-sum settlement, since reletting would take several months. On February 28, 1974, Holloway entered into a $196,-000 lump-sum settlement with defendant. This meant that the usual procedure of awarding related project contracts nearly simultaneously was not followed in the instant case. The excavation contract was finally awarded to Holloway on April 26, 1974, with a job start date of May 6, approximately 21 calendar days after the anticipated project start date of April 15.

The latest start date listed on the CP Method for the Fellows Creek bridges (B04 and B06) was September 19, 1974, and Toebe actually commenced work about August 29, 1974. Thus, Toebe was behind according to its own anticipated schedule, but was on schedule under the CPN, despite the delayed award of the excavation contract. Toebe was given access to the Palmer Road bridge site (S06) on June 6, 1974, while it projected April 30, 1974, as the starting date. Despite the delay in awarding the excavation contract, bridge S06 was completed in July, 1975, as originally estimated by Toebe. According to one of Toebe's engineers, the late award "did not affect that project at all". The lower court rejected plaintiff's claim for damages with respect to these projects.

It had been anticipated that work on the Cherry Hill bridges (S07 and B99) would begin on October 30, 1974. Bridge S07 was not begun until July, 1975, and B99 not until September, 1975. These delays were caused by the fact that installation of the 24-inch watermain, a condition precedent to work on Cherry Hill bridge B99, depended upon the special ordering and fabrication of prestressed concrete pipes. Holloway ordered this pipe on or about February 20, 1974, but it did not arrive on site until January, 1975. Nothing in CPN 370A mentioned the ordering and delivery of the special-order pipe. In the opinion of plaintiff's construction planning expert, Michael Hill, the ordering and delivery of the Cherry Hill watermain pipe was a major event which should have appeared on CPN 370A due to its long lead-time and its essential relation to the overall progress of the project. The lower court awarded plaintiff damages sustained as a result of this omission.

Work on the project was completed on April 12, 1976, eight months after the earliest projected

completion date and two weeks before the latest projected completion date. Toebe completed its contract in 168 of the 213 work days allotted it under the contract. According to Toebe, the initial delay caused by defendant's failure to simultaneously award the contracts for the bridge and excavation jobs prevented Toebe from utilizing its equipment in the sequence represented on the CPN in the most efficient and economical manner, as Toebe had planned, in order to timely complete the project. Plaintiff appeals from the lower court's calculation of damages on the latter projects and its refusal to award such on the former.

Plaintiff maintains that the trial court erred as a matter of law in finding that defendant was not liable for its delay in awarding the excavation contract to Holloway. Plaintiff's position is based upon three theories of recovery. First, plaintiff argues that the trial court found that defendant misrepresented that the bridge contract and the excavation contract would be let nearly simultaneously, but nevertheless ruled that defendant's delay in awarding the excavation contract was not unreasonable. Plaintiff contests not only the finding of reasonableness but also the conclusion that defendant's initial delay by itself had to be found unreasonable in order to be actionable. Second, plaintiff argues that defendant actively interfered with plaintiff's performance under its bridge contract by delaying the award to Holloway, thereby preventing timely completion of the work antecedent to bridge construction. Third, plaintiff alleges that defendant breached its duty to have the bridge construction site available and to coordinate the efforts of the various contractors involved in the overall project.

The lower court found that "Toebe had the right to expect that the excavation contract would be let

within a reasonable time". However, the court further found that no "unreasonable delay occurred between the awarding of Toebe's contract and the awarding of the excavation contract with Holloway", so that defendant was not liable for the delay. The court similarly found nonliability on plaintiff's active interference, site availability and coordination-of-work theories. Plaintiff argues that the court erred in relaying upon *E C Nolan Co, Inc v Michigan*, 58 Mich App 294; 227 NW2d 323 (1975), *lv den* 394 Mich 805 (1975), in concluding that defendant did not unreasonably delay in awarding the excavation contract to Holloway.

In *Nolan, supra,* Nolan submitted the low bid to the Highway Department for a project to lengthen a railroad bridge. Before Nolan could commence performance, the tracks on the existing bridge had to be relocated, and the department contracted with the railroad to have this done. The bridge bid proposal apparently indicated that the railroad's work would be started in April or May, 1968, and finished within 5 to 7 weeks. In a subsequent preconstruction meeting, the railroad stated that it could not commence work until September. As it turned out, the railroad's work did not begin until October, 1968, and was not completed until April, 1969, a delay found by the trial court to be 9-1/2 months. Nolan brought suit for additional expenses as a result of having to work in the winter, contending that the department's bid proposal misrepresented the time that the railroad would finish its work. This Court agreed. The *Nolan* Court then addressed the question of whether Nolan's contract insulated the department from liability for delays caused by third parties. This Court stated:

"It is our opinion that the department was only

relieved from liability for reasonable delays caused by third parties. To hold otherwise would be to say that regardless of how long a third party delayed, plaintiff would be required to perform its part of the contract without any hope of reimbursement for any increased costs caused by the delay. We do not believe the department intended the coordinating clause to so read, for if the effect of that clause were such as the department contends, *no responsible contractor would have entered into a contract on this project for the simple reason that the contractor would have no way of knowing how much it could cost it to perform or when it could expect to be finished with the project. A contractor can take a reasonably short delay into consideration when computing its bid on a project, but how could a contractor be expected to submit a competitive bid if it had to include in that bid expense for a delay that could be of indefinite duration?* We submit that a contractor could only compute a competitive bid if it were of the opinion that it would be reimbursed for additional expenses caused by unreasonable delays. It is our conclusion that this is precisely what occurred here. Plaintiff submitted its bid with the understanding that it would be compensated by the department for any additional expenses caused by unreasonable delays attributable to third parties." (Emphasis added.) 58 Mich App 302-303.

Plaintiff contends that *Nolan* is distinguishable from the instant case and was misapplied by the lower court. Plaintiff is correct that *Nolan* involved the department's insulation from liability for reasonable delays by *third parties;* but, we believe that the reasoning of *Nolan* is entirely appropriate to the present case in that it speaks to contractual principles such as expectancy and reasonableness. In a complex, multi-party project such as in the present case, a responsible contractor can and *should* take reasonable delays into consideration when preparing its bid, but should not bear the burden of lengthy or indefinite delays, *i.e.,* it is foreseeable that reasonable delays may occur. Ac-

cordingly, we reject plaintiff's contention that under *Nolan* defendant is responsible for all delays, both reasonable and unreasonable.

A further resort to basic contract principles instructs that plaintiff was only entitled to expect that excavation would commence within a reasonable time period. Evaluation of a government contract must be made in light of "surrounding circumstances, and cognizant of the realistic and legitimate expectations of [the] parties". *American Ship Building Co v United States,* 228 Ct Cl 220, 224; 654 F2d 75, 78 (1981). Here, Toebe's project manager admitted at trial that nothing in any of the bid documents specified when the excavation contract would be awarded. When a written contract is silent as to the time of performance, a reasonable time is to be presumed without reference to parol evidence. *Brady v Central Excavators, Inc,* 316 Mich 594, 607; 25 NW2d 630 (1947). What constitutes a "reasonable time" under the terms and circumstances of a contract is a question of fact. *Thornton Construction Co, Inc v Mackinac Aggregates Corp,* 9 Mich App 467, 470; 157 NW2d 456 (1968). Since the contract was silent as to the letting of the excavation contract, a reasonable time should be presumed for that event. It was not clear error for the trial court to find that a time some 21 days after the beginning of the construction season was reasonable. Defendant's delay in the present case was clearly reasonable as the trial court found. It was short in duration and was not due to defendant's bad faith. Defendant was faced with an over $900,000 cost overrun which could be solved only by its renegotiating with Holloway or reletting the excavation project, a procedure which would have taken several months. Clearly, given Toebe's posture regard-

ing the 21-day delay, the latter alternative would not have been feasible.

Furthermore, as noted above, projects B04 and B06 were begun within the starting dates listed on the CP Method printout, and S06 was completed within the established time frame. Accordingly, although plaintiff planned to start work on certain dates which were not met, the CP Method printout furnished by defendant was complied with in substantial part regarding these projects.

As to plaintiff's claim of misrepresentation or fraud, we note that, while "Toebe had the right to expect that the excavation contract would be let within a reasonable time", as the trial court held, it does not necessarily follow that when the Holloway award was postponed, defendant affirmatively engaged in an actionable misrepresentation in contract. The instant case is unlike *Nolan, supra,* where it was specifically stated that "[i]t was not controverted at trial that the department made representations of a material nature as to the work-progress schedule in the project proposal". 58 Mich App 299. Here, plaintiff claims that defendant "represented" that the bridge and excavation contracts would be awarded simultaneously. However, nowhere in the present case has plaintiff ever established that defendant positively asserted that the two contracts would be awarded simultaneously. See *A & A Asphalt Paving Co v Pontiac Speedway, Inc,* 363 Mich 634, 639; 110 NW2d 601 (1961), which requires a positive assertion as an element of fraud. Plaintiff's project manager admitted at trial that no such positive assertions were ever made. And the above discussion reflects that the first three projects fell within the dates projected by the CP Method printout.

Moreover, specification of a completion or estimated completion date in a contract does not by

itself constitute an affirmative representation or warranty that a project will be completed by a certain date. *American Ship Building Co, supra.*

Finally, plaintiff contends that its theory of misrepresentation is supported by *Bank v Board of Education of City of New York,* 305 NY 119; 111 NE2d 238 (1953). In *Bank, supra,* the total of low bids received on four interrelated contracts exceeded the amount authorized for a school building construction project. Knowing that it could not go forward with the project until sufficient funds were made available at some indefinite point in time, the board of education nevertheless let two of the contracts in order to lock in the bids. The board directed the two contractors to execute their contracts under penalty of forfeiting their bid deposits. Given the lack of sufficient funds and the board's change of plans for completing the project without giving prior notice to the two bound contractors, the court essentially concluded that their contracts had been fraudulently induced.

In the present case, however, defendant had both the means and the intent to go forward with the project in accordance with progress schedules. Despite the delay in awarding the excavation contract, the project went forward and was, in fact, completed two weeks before the latest project completion date. Plaintiff does not allege that the contract was fraudulently induced and is not seeking rescission. Instead, this action is based on plaintiff's assumptions that the contracts were to be simultaneously awarded and the project was to have proceeded on the basis of calendar dates that *it* derived from the CPN reflecting only the number of work days for each project phase and an estimated completion date. There are simply no contractual provisions, express or implied in law, which support these assumptions.

Plaintiff next contends that the lower court erred in finding that defendant did not interfere with Toebe's work during the period of the contract. In order to prevail on its claim of active interference due to defendant's alleged failure to award timely the excavation contract, plaintiff must show "some affirmative wilful act in bad faith which unreasonably interfered with [its] compliance with the contract". *Phoenix Contractors, Inc v General Motors Corp,* 135 Mich App 787, 794; 355 NW2d 673 (1984). In support of its contention, plaintiff asserts that on February 13, 1974, defendant notified plaintiff to proceed with the bridge contract knowing that (1) plaintiff was unaware of defendant's prior intent not to award the interdependent excavation job contract as bid, (2) defendant was negotiating with Holloway "to save itself some $800,000", (3) Holloway could withdraw its bid after February 26, 1974, and (4) plaintiff could not commence site work until after Holloway had signed its contract and had completed preliminary site work.

Contrary to plaintiff's assertion, however, the evidence showed that defendant had every intention of awarding the Holloway contract as bid, except for renegotiating the cost item erroneously calculated. Rather than exercising the right to reject all bids and relet the contracts because of one cost item, defendant sought to avoid months of delay by negotiating a lump sum payment with Holloway. This action does not evince a bad-faith intent to purposely delay or interfere with Toebe's performance.

Moreover, because defendant is a public agency acting in the public interest, it had both a duty and a right to correct an error which could have cost the public close to $900,000. See *Fischbach & Moore, Inc v New York City Transit Authority,* 79

App Div 2d 14; 435 NYS2d 984 (1981). Defendant was acting well within its discretion by seeking to minimize delays on the project. First, it renegotiated the cost item rather than reletting all the contracts. Second, it directed plaintiff to proceed with those activities that did not require access to the work site, *e.g.*, ordering critical construction materials, while it went forward with negotiations on the excavation contract. Plaintiff has failed to establish the requisite bad faith.

Finally, plaintiff contends that the lower court erred as a matter of law in finding that defendant did not breach its site availability and coordination duties. Plaintiff's argument is that as a part of its duty to coordinate the excavation and bridge contracts, defendant had a corresponding duty to accelerate Holloway's work because of the delay in awarding the excavation contract. Implicit in that argument, however, is the assumption that Holloway was late under the progress schedule. As noted above, the progress schedule in the present case was expressed in work days rather than calendar days and, as far as defendant was concerned, Holloway was on schedule because Holloway was working within its allotted schedule for work days.

Plaintiff failed to submit an alternative progress schedule under the contract which could have incorporated the calendar dates it allegedly used for bidding purposes. As a result, progress under the contract was measured by defendant in terms of work days rather than calendar days. Three of the bridge structures were completed in accordance with the progress schedule, despite the initial delay in awarding the excavation contract. As determined by the lower court, delays on the remaining two bridge structures were due only to the omission of information concerning the water-

main installation in CPN 370A, for which plaintiff was awarded damages. There was, therefore, no basis for ordering Holloway to accelerate its work. We now turn to the calculation of damages regarding the watermain installation.

The lower court awarded plaintiff damages for the 212-day period from the time plaintiff completed work on the Fellows Creek and Palmer Road bridges to the time plaintiff finished all work on the bridge project. Plaintiff contends that this calculation was based on the erroneous conclusion that defendant was only liable for the watermain delay and not for the original delay in the letting of the excavation project. The lower court noted below:

"Toebe's presentation of its evidence of damages is based on its perception that it was unreasonably delayed at the inception of this contract and the damages continued throughout the entire course of the contract. Evidence of damage is not broken down in specific projects within the contract and this court has determined that there was no unreasonable delay at the beginning of the contract period but that there was a misrepresentation in the CPN regarding the Cherry Hill Road bridges which caused damages to Toebe. The construction on bridges B99 and S07 could not, according to the contract, begin until connection of the watermain which was scheduled in the CPN for October 29, 1974."

As defendant correctly notes, Michigan law is contrary to plaintiff's arguments and supports the holding of the lower court. A party to a contract who is injured by another's breach of contract may recover from the latter only those damages which are the direct, natural and proximate result of the breach. *Stewart v Rudner,* 349 Mich 459, 468-469; 84 NW2d 816 (1957). Having found that the original delay was reasonable and did not amount to a

breach of contract, we conclude that plaintiff was not entitled to damages on this basis.

Even assuming that the original delay was compensable, plaintiff's argument that the delay resulted in subsequent damage throughout the entire course of the contract involves claims that are too remote. Delay damage claims that are supported only by a total time theory and are grounded upon a number of alleged incidents without a satisfactory showing of the extent of the actual delay caused by any of the incidents have been rejected. See *e.g., Law v United States,* 195 Ct Cl 370, 386 (1971); *Jefferson Construction Co v United States,* 177 Ct Cl 581, 598; 368 F2d 247, 258 (1966); *Commerce International Co, Inc v United States,* 167 Ct Cl 529, 542; 338 F2d 81, 89 (1964), and *George J Grant Construction Co v United States,* 124 Ct Cl 202, 205-206; 109 F Supp 245, 246 (1953).

The lower court did find, however, that defendant's failure to include installation of the watermain in the CPN impacted on plaintiff's work on the last two bridges of the project, beginning on September 12, 1975, and running through to the completion date of April 12, 1976, a total of 212 days.

The lower court accepted plaintiff's 1975 rate of $139.74 per day lost contribution to overhead and multiplied that by the total number of days that plaintiff was affected by the watermain misrepresentation. In addition, the court awarded (1) a 15% markup, (2) expenses incurred by plaintiff's rehandling of structural steel, and (3) increased labor costs, plus a 20% markup, for a total award of $42,304.19. This award is a reasonable approximation of the damages to which plaintiff is entitled. Plaintiff failed to present specific evidence of damage based on its claims of inefficiences due to

winter work and work performed out of sequence. A party asserting a breach of contract claim bears the burden of proving its damages with reasonable certainty. *S C Gray, Inc v Ford Motor Co,* 92 Mich App 789, 801; 286 NW2d 34 (1979), *lv den* 408 Mich 869 (1980).

Affirmed.