# STATE OF MICHIGAN

# COURT OF APPEALS

ATTORNEY GENERAL and DEPARTMENT OF
ENVIRONMENTAL QUALITY,

UNPUBLISHED
May 31, 2018

Plaintiffs-Appellants,

v

No. 339754
Ingham Circuit Court
LC No. 94-077813-CE

POLYONE CORPORATION, successor to M. A.
HANNA COMPANY,

Defendant-Appellee.

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

Plaintiffs, Attorney General and the Department of Environmental Quality (MDEQ),
appeal as of right an opinion and order granting defendant summary disposition under MCR
2.116(C)(10) (no genuine issue of material fact). They also challenge an opinion and order
granting defendant PolyOne Corporation's request to be reimbursed for the costs of operating a
disputed water treatment system. We affirm.

## I. FACTS

This case concerns an upwelling of acidic water from the Dober Mine Complex in Iron
County, which was the subject of a 1998 consent decree between plaintiffs and M. A. Hanna
Company, to whom defendant is the successor in interest. Among other things, the consent
decree required M. A. Hanna and its successors to renew an NPDES[1] permit and operate an
existing remedial water treatment system at the mine. The decree provided that, after defendant
had completed the decree's requirements and had been issued "a final NPDES Permit,"
defendant would submit a notice of completion to the MDEQ, which would decide whether
defendant had completed the decree's requirements. If the MDEQ determined that defendant

---

[1] NPDES stands for "National Pollutant Discharge Elimination System," a type of permit issued
through the MDEQ as part of a state-administered program under the Federal Water Pollution
Control Act. *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 108-
109; 807 NW2d 866 (2011).

had done so, it would issue a Certificate of Completion. The Certificate of Completion would end defendant's obligations under the consent decree.

On July 16, 2012, defendant sent the MDEQ a Notification of Completion and a draft final report. Ultimately, on December 6, 2012, the MDEQ issued defendant a Certificate of Completion. In its letter, the MDEQ stated that defendant would still be required to operate and maintain the NPDES permit and maintain the water treatment system at the Dober Mine Complex. This created a dispute between the parties regarding whether defendant had an obligation independent of the consent decree to do so.

On May 14, 2013, the MDEQ sent defendant a letter revoking the Certificate of Completion. Defendant responded by filing a petition for declaratory relief with the circuit court, asking the court to determine that defendant had no independent obligations to operate and maintain the water treatment system and that plaintiffs could not revoke the completion certificate. The circuit court ultimately agreed with defendant and ordered plaintiffs to pay defendant the costs of operating the system after December 2012, pursuant to stipulations between the parties.

## II. CONTINUING OBLIGATIONS

Plaintiffs argue that the lower court erred by determining that the consent decree did not require defendant to continue operating the existing water remediation system after the MDEQ issued the Certificate of Completion. We conclude that plaintiffs' position is without merit because the consent decree did not provide for ongoing maintenance obligations.

This Court reviews de novo the trial court's decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). A party is entitled to summary disposition under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." A genuine issue of material fact exists if, when viewing the record in the light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 116; 839 NW2d 223 (2013).

This Court interprets judgments entered by agreement of the parties in the same manner as contracts. *Gramer v Gramer*, 207 Mich App 123, 125; 523 NW2d 861 (1994). This Court reviews de novo the proper interpretation of an unambiguous contract. *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 463; 663 NW2d 447 (2003). This Court also reviews de novo the legal effects of contractual clauses. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 369; 666 NW2d 251 (2003).

The goal of contractual interpretation is to honor the parties' intent and to enforce the contract's plain terms. *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006). This Court discerns the parties' intent from the contract's language. *Id*. If no reasonable person could dispute the meaning of the contract's plain language, this Court must enforce that language as written. *Rory v Continental Ins Co*, 473 Mich 457, 468; 703 NW2d 23 (2005). We construe contractual terms in context, according to their commonly used meanings. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999). We must interpret a

contract in a way that gives every word, phrase, and clause meaning, and must avoid interpretations that render parts of the contract surplusage. *Klapp*, 468 Mich at 468.

In this case, § XXVI of the consent decree states: "Upon issuance of the Certificate of Completion of Response Activities Performed Pursuant to this Decree, the Defendant's obligations as set forth in this Decree shall terminate, except as otherwise provided herein." Accordingly, unless an ongoing obligation is provided in the decree, defendant's obligations end when a Certificate of Completion is issued.

Plaintiffs rely on ¶ 4.4 (defining "Existing Remedial System") and ¶ 4.8 (defining "Operation and Maintenance Activities" or "O & M Activities") of the decree to argue that the consent decree provided an ongoing obligation to operate and maintain the existing remedial system. Plaintiffs' argument is not persuasive because these paragraphs are in the "definitions" section of the consent decree. Because these paragraphs are only definitions, not terms and conditions of the consent decree, they cannot constitute other *obligations*. Similarly, while § 3 of the consent decree states that a general goal of the consent decree is "to operate and maintain the Existing Remedial System," this general statement of goals is not in the area of the decree that defines the parties' obligations.

Regarding operation and maintenance, the decree provided that defendant had an obligation to "implement[] . . . the O&M Activities and sampling required by *the current NPDES Permit*." (Emphasis added.) However, the then-current permit ended at some point before PolyOne renewed the permit on October 1, 2005.[2] Because this provision was specifically limited to the "current" permit, it would not require defendant to engage in operation and maintenance activities past the expiration of that permit. Nowhere else does the decree mention any obligations for ongoing operation and maintenance.

Also contrary to plaintiffs' position, the consent decree contemplates that plaintiffs may bring future actions against defendant regarding "response activities related to the facility" after issuing a Certificate of Completion. The decree provides:

> Plaintiffs' Post-Certification of Completion Reservations: Notwithstanding any other provision of this Decree except as provided in Paragraph 21.1(e), the Plaintiffs reserve, and this Decree is without prejudice to, the right to institute proceedings in this action or in a new action, or to issue an administrative order seeking to compel Defendant (1) *to perform further response activities relating to*

---

[2] Plaintiffs argue that defendant's actions in consistently renewing the NPDES permit and engaging in continued maintenance and operation of the facility provided evidence that the parties intended defendant's obligation to extend beyond the current NPDES permit. Extrinsic evidence may help the finder of fact determine the meaning of a contract. *Klapp*, 468 Mich at 471 n 13. However, extrinsic evidence of the parties' intent is only relevant when attempting to determine the meaning of an *ambiguous* contract. *Id*. at 470. The consent decree in this case is not ambiguous. We will not look beyond the plain language of the consent decree to determine its meaning.

*the Facility* or (2) to reimburse the State of Michigan for additional costs of response if, subsequent to Certificate of Completion of the response activity:

> (a) Conditions at the Facility, previously unknown to the MDEQ, are discovered; or

> (b) Information is received, in whole or in part, and these previously unknown conditions or this information together with other relevant information indicate that the remedial action is not protective of the public health, safety and welfare, or the environment. [Emphasis added.]

The consent decree expressly contemplates that further response activities may be required after the decree ends. This phrase would be surplusage if we accepted plaintiffs' assertion that the consent decree obligated defendant to perform ongoing maintenance operations until they were no longer required. We decline to interpret the decree in such a fashion.

Further, the circuit court's interpretation is consistent with the use of the indefinite article "a" in ¶ 25.1 when referring to when plaintiffs could issue a Certificate of Completion. The consent decree provides: "Within sixty (60) days after Defendant is issued *a* final NPDES Permit, Defendant shall submit to the MDEQ a Notification of Completion . . . ." (Emphasis added.) Because the consent decree refers to "a" final NPDES permit, it does not refer to a singular and specific permit. The circuit court's interpretation was consistent with this paragraph because the use of the indefinite article indicates that any of several NPDES permits may be final for the purposes of the decree.

We conclude that the circuit court properly determined that defendant did not have an obligation of ongoing maintenance and operation after the termination of the consent decree. Reading the decree as a whole, defendant's obligations to perform ongoing maintenance activities — beyond those required by the NPDES permit that was current in 1999 — terminated when plaintiffs issued a Certificate of Completion.

III. REVOCATION

Plaintiffs argue that the circuit court erred when it determined that they could not revoke the Certificate of Completion because an agency has inherent authority to correct a decision that was based on mistaken information. Plaintiffs assert that they validly revoked the certificate because the decision was based on a mistake about who owned the Dober Mine Complex. Because the mistake was not material to whether defendant was entitled to a completion certificate, we disagree.

This Court reviews de novo the scope of an administrative agency's statutory authority. *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 127; 807 NW2d 866 (2011). An agency acting in the public interest has both the duty and the right to correct its own errors. *Walter Toebe & Co v Dep't of State Highways*, 144 Mich App 21, 34; 373 NW2d 233 (1985).

Presuming that plaintiffs operated under a mistaken belief that defendant owned the Dober Mine Complex, this mistake would not entitle plaintiffs to relief in this case because

-4-

plaintiffs cannot show that the initial decision to issue the Certificate of Completion was erroneous. The consent decree provides as follows regarding issuance of a Certificate of Completion:

> Within sixty (60) days after receipt of the Notification of Completion, the MDEQ will review the Notification of Completion and will determine whether Defendant has completed satisfactorily all requirements of this Decree. Within the sixty (60) day period after receipt of the Notification of Completion, MDEQ will notify Defendant of its determination as to whether or not Defendant has satisfied all requirements of the Decree. If MDEQ has determined that Defendant has satisfied all requirements of the Decree, it *shall* issue a Certification of Completion of Response Activities Performed Pursuant to this Decree within the sixty (60) day period. If MDEQ has determined that Defendant has not satisfied all requirements of the Decree, the letter so advising Defendant shall specify those requirements which Defendant has not satisfied. [Emphasis added.]

The term "shall" is mandatory. *Walters v Nadell*, 481 Mich 377, 383; 751 NW2d 431 (2008). Thus, this paragraph required the MDEQ to issue a Certificate of Completion if defendant had completed the requirements of the consent decree. Nothing in this paragraph, or the remainder of the consent decree, requires defendant to continue to own the Dober Mine Complex. Because the term "shall" in ¶ 25.2 is mandatory, plaintiffs did not have discretion to deny defendant a Certificate of Completion if defendant met the requirements of the consent decree, and those requirements do not include ownership. As previously discussed, ongoing operation and maintenance is also not a requirement of the parties' consent decree. Accordingly, we conclude that plaintiffs have not shown that their mistake regarding the owner of the mine led to an erroneous initial decision. While the circuit court did not explicitly address an agency's inherent authority to correct an error, the court did not err by determining that plaintiffs could not revoke the Certificate of Completion.

## IV. COSTS AS DAMAGES

Plaintiffs argue that the circuit court erred by failing to grant them summary disposition on defendant's claim for damages on the basis of governmental immunity. Plaintiffs' argument is without merit because this case concerns an action arising from a contract and governmental immunity applies only to tort-based claims.

This Court reviews de novo questions concerning the applicability of governmental immunity. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). Generally, governmental entities are immune from tort liability. *Koenig v South Haven*, 460 Mich 667, 675; 597 NW2d 99 (1999). "However, governmental immunity does not extend to contract actions, even when the contract action arises out of the same facts that would support a tort action." *Id*. A tort action arises from an action concerning a contractual obligation only if the obligation violates "a legal duty separate and distinct from the contractual obligation." *Fultz v Union-Commerce Assoc*, 470 Mich 460, 467; 683 NW2d 587 (2004) (quotation marks and citation omitted).

Plaintiffs argue that defendant's claim used language similar to language used for a tort action. However, the question is not what language defendant used, but whether this case arose from a separate and distinct legal duty outside the consent decree. In this case, defendant alleged that plaintiffs breached the parties' consent agreement by purporting to revoke its Certificate of Completion. Defendant's costs were incurred from its operation and maintenance of the water remediation at the Dober Mine Complex under the NPDES permit after plaintiffs issued the certificate. The claims did not arise from separate, distinct legal duties between the parties. Accordingly, we conclude that the lower court properly determined that governmental immunity did not apply to bar defendant's claim for damages because the damages arose from a contract, not a tort.

## V. DISCOVERY ON COSTS

Plaintiffs argue that the lower court erred by denying them the opportunity to engage in discovery regarding costs. We conclude that plaintiffs have waived this issue.

A waiver is an intentional relinquishment or abandonment of a known right. *Quality Prod*, 469 Mich at 374. A party may not take a position before this Court that is contrary to a position the party took before the lower court. *Grant v AAA Mich/Wisconsin, Inc (On Remand)*, 272 Mich App 142, 148; 724 NW2d 498 (2006).

In this case, the following exchange took place:

> [Counsel for defendant]. . . . I am pleased I have worked with [counsel for plaintiffs], and we have agreed and stipulated that the costs that were submitted . . . were, in fact, incurred by PolyOne and were incurred in connection with the Dober Mine, although he retains all his other arguments regarding the collectability of those costs. But we need not have a witness he has agreed.
>
> THE COURT. So the amounts, [counsel for plaintiffs], are not in dispute?
>
> [Counsel for plaintiffs]. Correct.

Plaintiffs thus expressly agreed that the costs that defendant submitted were in fact incurred by defendant in connection with the Dober Mine Complex. To allow plaintiffs to challenge this issue on appeal would be to allow them to take a position contrary to the position they took before the lower court. We decline to allow plaintiffs to do so.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra