*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANA JOSE,

        Plaintiff/Counterdefendant-
        Appellee,

v

SEBASTIAN MALARZ,

        Defendant/Counterplaintiff-
        Appellant.

UNPUBLISHED
December 3, 2019

No.  347154
Kent Circuit Court
LC No.  17-004766-CH

Before:  MARKEY, P.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right the trial court's opinion and order, following a bench trial, granting plaintiff's request for specific performance of an option to purchase real property and dismissing defendant's counterclaims for slander of title and eviction.  We affirm.

## I.  PERTINENT FACTS AND PROCEDURAL HISTORY

On April 22, 2014, plaintiff and defendant entered into an agreement for plaintiff to lease from defendant, for a period of 36 months, the real property located at 138 Straight Avenue, NW, Grand Rapids (the property).  The lease contained the following pertinent language:

This is a lease with an option to buy.

\* \* \*

At the end of the 36 month period[1] the leasee will purchase the property for a price of $13,500.  If leasee does not purchase said property at that time, the leasee forfiets [sic] all rights to the property and all monies paid on it.

During the several months preceding the termination of the lease period, plaintiff and defendant communicated regarding the exercise of the option, but no purchase transaction closed and no money was exchanged.  Defendant then attempted to evict plaintiff from the property by serving plaintiff with a Notice to Quit dated May 3, 2017.

On May 26, 2017, plaintiff filed suit, seeking to compel defendant to transfer the property to her under the terms of the option.  Plaintiff alleged in her complaint that she and defendant had exchanged text messages in January 2017 about plaintiff's exercise of the option.  Plaintiff further alleged that she had informed defendant "in writing via text message that she was exercising the option to purchase prior to the expiration of the 36 month period set forth in [the lease]."  Plaintiff indicated that she had requested that defendant provide certain information, including whether the purchase price would be offset by additional funds over the rent that plaintiff claimed to have paid over the term of the lease, as well as where and how to tender funds and conduct the closing of the sale.  According to plaintiff, defendant did not provide her with a payoff amount, did not (despite her requests) provide any information to her about where or how to tender the funds, did not provide any information about how or where the title would be transferred, and actually demanded "substantially more money from Plaintiff in order to close, despite the plain language of [the lease]."  Plaintiff maintained that she was, and remained, ready and able to tender the amount of $13,500 to purchase the property.

In his answer, defendant admitted that plaintiff had indicated a desire to exercise the option, but denied that plaintiff had ever followed through on those representations.  Defendant claimed that plaintiff never tendered any funds or attempted to close on any sale, and stated that the sales price was clearly stated in the option agreement.  Defendant also denied that plaintiff's rental payments were timely and that they ever exceeded $500 per month unless an excess payment was made to account for back rent.  According to defendant, the option had expired and he was no longer willing to sell the house to plaintiff.  Additionally, defendant raised counterclaims of slander of title and eviction.

The matter proceeded to a bench trial.  At trial, plaintiff testified that she and defendant had engaged in discussions during the course of the 36-month lease period regarding her purchase of the property.  Plaintiff indicated that those conversations began at some point in the fall of 2016.  According to plaintiff, defendant told her that someone else was interested in the property if plaintiff decided not to buy it, and plaintiff reminded defendant of her option to purchase.  Plaintiff testified that, in January 2017, she and defendant

started talking as of when we were going to go ahead and do the closing.  And I said, yeah, I'm working—I'm working on that, securing the funds for us to do the

---

[1] The parties agreed that the 36-month lease period ended on April 22, 2017.

-2-

closing. And then I wanted to get like a payoff from him. I wanted to just get something in writing stating the total amount that was needed in order for us to finalize the transaction. And for some reason or another, he kept giving me this number, 17,500, and—every time we had a conversation. And to be honest, I had misplaced my lease option that I had, and I wasn't quite sure. So that's why I was asking him. So then I got a copy of my lease option. I was able to find it, and was like, you know, it's not even 17,500. Why would you keep telling me 17,500 when we had agreed on 13,500?

Plaintiff further testified that she had received a letter from Kent County indicating that property taxes had not been paid on the property.[2] Plaintiff sent defendant a text message on February 13, 2017 regarding the letter she had received. Defendant responded by telling her that the taxes had been paid. A subsequent March 7, 2017 text message from plaintiff requested that defendant provide her with "something showing that taxes were paid." Plaintiff sent another text message to defendant on March 8, 2017, asking him about "the status of the property taxes." Defendant responded, "They were payed [sic]." However, according to plaintiff, defendant never provided her with proof that the property taxes had been paid.

According to plaintiff's trial testimony, as well as a series of additional text messages that were admitted into evidence at trial, the parties engaged in a further text message conversation on March 8, 2017 regarding plaintiff's desire to purchase the property. Defendant asked plaintiff if she was going to buy the property, and she responded, "yes." When defendant asked plaintiff when she would buy it, she informed defendant that she was selling another property in order to pay for the property at issue in this case. When defendant pressed plaintiff further about when she would purchase the property, she replied, "as soon as I sell it" and explained that the house was going on the market the following week.[3]

Plaintiff testified that following this text message exchange, she and defendant continued to discuss when they would finalize the purchase of the property. According to plaintiff, she asked defendant "numerous" times when and where the closing would be, and defendant responded by telling her that she "just need[ed] to give a check." Plaintiff told defendant that she could not "just give [defendant] a check" and that she wanted to "close at a title company." Plaintiff testified that she did not want to just give defendant a check because there were "issues with taxes" and she "wanted to make sure that there were no tax liens on the property." Eventually, defendant stopped returning plaintiff's phone calls.

---

[2] In response to a hearsay objection by defense counsel regarding plaintiff's testimony that she had received this letter, the trial court ruled, "we'll not accept it for a statement of fact that the taxes weren't paid, but for the perception that the plaintiff had that the taxes weren't paid and the reason for that perception."

[3] As noted, this text message conversation occurred more than 6 weeks before the expiration of the 36-month lease period.

Plaintiff testified that she never gave defendant $13,500, but that at the relevant time she "had the money available" and had offered it to defendant, although she did not put it in escrow. Plaintiff testified that she did not give the money to defendant at that point because she "wanted to make sure that [she] got clear title, and he was not going to be able to provide [her] that."

Defendant testified that under the terms of the lease, plaintiff "would have the option by the 22nd to purchase the property. And if she didn't purchase it by then, then the contract was over." Defendant contended that the $13,500 had to have been tendered by midnight on April 22, 2017, when the contract expired, in order for the option to have been exercised. Defendant testified that plaintiff never purchased the property, never gave him the funds, and never told him that the funds were being held somewhere with instructions to transfer the funds to defendant upon his presentation of clear title to the property. According to defendant, his conversations with plaintiff "went always with a [sic] I will purchase the house, but I don't have the money right now." Defendant testified as follows on direct examination:

> *Q.* The—in March, did you have another discussion with her?
>
> *A.* Of course.
>
> *Q.* What did—what did you tell her at that time?
>
> *A.* I asked her if she was going to buy the house, and she plainly said yes, and I said when. She could not tell me a time, so nothing was done.
>
> *Q.* Did you talk to her about the option expiring?
>
> *A.* I did.
>
> *Q.* What did you say to her then?
>
> *A.* I told her that the option was going to expire on April 22nd, that she needed to take care of this if she wanted to purchase the house. She said I know.
>
> *Q.* What did she do to comply?
>
> *A.* Nothing.
>
> *Q.* Did she tell you about putting—getting the money when she sold another house?
>
> *A.* Yes. She told me she was going to sell a house. And it was my assumption that when she sold that house that she would have the funds available to purchase or to fulfill the purchase agreement.

Defendant further testified regarding liens on the property:

-4-

*Q.* Is it your testimony that if she would—would have come up with the 13,500 you would have used it to pay off any liens and given her clear title?

*A.* Correct.

*Q.* But you did not receive 13,500?

*A.* I was never informed that she had any money available.

Defendant testified that he was no longer willing to sell the house to plaintiff for $13,500.

The trial court issued a written opinion and order granting plaintiff's request for an order of specific performance and dismissing defendant's counterclaims. The trial court made the following relevant factual findings:

By the terms of the agreement, the 36-month period of the agreement would run until April 22, 2017. During this time, plaintiff made various repairs and spent substantial time and money on maintenance and upkeep. Plaintiff was trying to arrange for financing and prepare for the purchase of the property around January 2017 as the end of the lease period approached. She received a notice around February 13, 2017 stating that taxes were not paid and asked defendant about this via text message. Defendant responded that they were paid, and plaintiff then provided a picture of the delinquency notice to defendant. On March 7, plaintiff asked defendant to provide something showing the taxes were paid. Defendant never provided plaintiff with anything other than to again say they were paid. On March 8—about a month and a half before the expiration of the lease period—defendant asked plaintiff if she was buying the property, and plaintiff said she was. Defendant asked when that would be, and plaintiff responded that she was going to be putting another home on the market the next week and could use the money from that home to purchase the property. Defendant responded to that by stating, "Ok, let me know."

In addition to the text messages, plaintiff discussed the purchase of the property with defendant over the phone and sometimes in person, beginning around January 2017. She discussed the need for mortgage payoff information, tax documentation, and lien information. She was trying to get title work going and arrange for a time and place for a closing, but defendant did not provide any requested information and eventually stopped answering her phone calls. Plaintiff testified she could have arranged for the tender of payment through a loan from a friend, but did not want to just hand over $13,500 when defendant was not responding to her calls and did not provide the requested information regarding the property and its mortgage and tax status. Indeed, as it turns out, plaintiff discovered shortly after the lease period ended that there was a tax lien listed on the property in the amount of $56,000 (although defendant presented evidence suggesting this was only enforceable for $11,450 of unpaid taxes at the time of expiration of the lease period).

It should also be noted that defendant had received offers from other potential buyers before and after the end of the lease period. Although defendant did not accept these offers at the time, the offers were substantially more than $13,500, and it is agreed that the property is valued at much more than $13,500 on the open market.

Having made these factual findings, the trial court set forth its conclusions of law, including that plaintiff had exercised the option in a timely manner and that, by his lack of cooperation, defendant had essentially prevented the transaction from being completed:

Defendant's legal position is that the option to buy expired at midnight on April 22, 2017, and the lack of any tender of payment by that time means the option expired and plaintiff forfeited all rights to the property. Respectfully, that position lacks merit.

The terms of the agreement state that plaintiff "will purchase" the property "[a]t the end of the 36-month period". The option does not require plaintiff to purchase the property before the end of the term, and the plain language technically does not even allow it. The agreement does not mention anything about tender of payment and, by its terms, the option only ripens at the expiration of the 36-month period. Based on the plain language of the agreement, which was drafted by defendant, there is no way to infer a condition that payment be immediately tendered at midnight on April 22, 2017 or else forfeiture would result. Indeed, such a requirement would be plainly unreasonable. *See also Catsman v Eister*, 8 Mich App 563[; 155 NW2d 203] (1967) (explaining that tender is not a condition precedent to the creation of a contract under an option when the option does not so provide).

Given the absence of a specific timing requirement for tender or completion of the purchase, the default rules regarding timing of performance apply. "When a written contract is silent as to the time of performance, a reasonable time is to be presumed without reference to parol evidence." *Walter Toebe & Co v Dept of State Highways*, 144 Mich App 21, 31 (1985). In this case, plaintiff made defendant aware of her intent to purchase the home and attempted to get information and documentation that would be necessary for such a purchase. Defendant did not cooperate with plaintiff or gave [sic] her a real chance to perform. He never set any deadline or timelines as to what he considered reasonable. Rather, he was not interested in selling the home to plaintiff for the agreed upon price and he treated the agreement as if it included terms it did not. Furthermore, while the Court understands that perhaps defendant was skeptical about plaintiff's ability to pay in light of some of the payment history, he had no right to simply assume she could not pay. He was required to take reasonable steps allowing the facilitation of the purchase. He could have worked with her to discuss reasonable timeframes and deadlines, but he did not. Plaintiff [sic] cannot claim forfeiture of all of the prior payments based on a lack of tender when he effectively made the tender impossible by failing to cooperate with plaintiff to provide necessary information and set plans for the final sale of

the property. *See Kiff Contractors Inc v Beeman*, 10 Mich App 207 (1968) (explaining that one who prevented performance of the contract cannot later complain about the lack of performance).

Respectfully, based on the foregoing, the Court finds that plaintiff attempted to exercise the option in a timely manner and there was no forfeiture under these circumstances when defendant was obstructing the sale of the property by withholding information and cutting off contact with plaintiff. Plaintiff is entitled to specific performance of the contract, and her request for that relief is GRANTED. *See In re Smith Trust*, 480 Mich 19, 20-21 ("[B]ecause real property is unique, and the petitioners timely exercised their option to purchase the property, specific performance is the proper remedy in this case.").

Additionally, given the plain language of the contract and plaintiff's entitlement to specific performance, defendant has no valid claim for slander of title or eviction. His countercomplaint fails and must be DISMISSED.

This appeal followed.

## II. STANDARD OF REVIEW

"We review the trial court's factual findings after a bench trial and in an equitable action for clear error, and its legal conclusions de novo." *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). "[S]pecific performance is an equitable remedy . . . ." *Zurcher v Herveat*, 238 Mich App 267, 297; 605 NW2d 329 (1999). "A trial court's findings are clearly erroneous only when the appellate court is left with a definite and firm conviction that a mistake has been made." *Harbor Park*, 277 Mich App at 130. "The existence and interpretation of a contract are questions of law reviewed de novo." *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

## III. ANALYSIS

We first consider defendant's arguments that plaintiff's claim was not ripe or was barred by the doctrine of laches, and that the trial court therefore erred by considering it. Defendant did not raise the affirmative defense of laches in his first responsive pleading or raise it before the trial court, and has therefore waived it. See MCR 2.11(F)(2) and (3); see also *Badon v Gen Motors* Corp, 188 Mich App 430, 436-437; 470 NW2d 436 (1991). Defendant also failed to raise the issue of ripeness before the trial court, although the application of a justiciability doctrine such as ripeness cannot be waived. See *Mich Chiropractic Council v Comm'r of Office of Fin & Ins Servs*, 475 Mich 363, 370-371; 716 NW2d 561 (2006) (opinion by YOUNG, J.), overruled in part on other grounds by *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349; 792 NW2d 686 (2010). We conclude that plaintiff's claim was ripe.

The ripeness doctrine "requires that an actual injury be sustained by the plaintiff" and is "designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained." *In re Reliability Plans of Electric Utilities for 2017-2021*, 325 Mich App 207, 217; 926 NW2d 584 (2018) (quotation marks and citation omitted). In assessing ripeness,

this Court considers "whether the harm asserted has matured sufficiently to warrant judicial intervention." *Id*. at 218 (quotation marks and citation omitted). "A claim is not ripe if it rests upon contingent future events that may not occur as anticipated, or may not occur at all." *Id*. (quotation marks and citation omitted).

Plaintiff's cause of action was not based on a hypothetical injury. The parties disputed whether plaintiff had properly exercised or attempted to exercise her option to purchase the property such that defendant was obligated to sell it to her. The matter proceeded to a bench trial on the merits resulting in a judgment by the trial court. The controversy was ripe because it was sufficiently mature to warrant judicial intervention to determine whether there was actually an enforceable contract and to resolve the parties' dispute. *Id*. at 217-218.

Substantively, defendant argues that no binding contract to purchase was created because plaintiff failed to exercise her option. More specifically, defendant contends that the option was an "offer" to purchase, and that because plaintiff failed to tender the purchase price within the 36-month lease period, she did not accept the offer.

"Before a contract can be completed, there must be an offer and acceptance. Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Kloian*, 273 Mich App at 452 (quotation marks and citation omitted). To form a contract, there must be "mutual assent or a meeting of the minds on all the essential terms." *Id*. Although an "option may ripen into a binding bilateral contract of purchase and sale by a seasonable exercise of the option and compliance with its terms by the optionee," there is nonetheless a "definite line of distinction between an option and a contract of purchase and sale." *Le Baron Homes v Pontiac Housing Fund*, 319 Mich 310, 315; 29 NW2d 704 (1947). Our Supreme Court has explained this distinction as follows:

> An option is not a contract of purchase, it is simply a contract by which the owner of the property agrees with another that he shall have a right to buy the property at a fixed price within a specified time. An option is but an offer, strict compliance with the terms of which is required; acceptance must be in compliance with the terms proposed by the option both as to the exact thing offered and within the time specified; otherwise the right is lost. [*Id*. at 313 (quotation marks and citations omitted).]

In this case, the option provided:

> At the end of the 36 month period the leasee will purchase the property for a price of $13,500. If leasee does not purchase said property at that time, the leasee forfiets [sic] all rights to the property and all monies paid on it.

The trial court found that, before the expiration of the 36-month lease period, plaintiff told defendant that she wished to purchase the property, and pressed defendant repeatedly for information about where and when to complete the purchase through a closing, in the manner that sales of real property generally are effected. Although plaintiff also asked defendant questions regarding tax liens on the property or whether defendant possessed clear title, she did not condition the exercise of her option to purchase on defendant providing this information—

rather, in context, it is clear that plaintiff was expressing concern that defendant may have lacked the ability to complete his part of the "purchase" referred to in the option, i.e., actually conveying clear title to the property in return for the purchase price. Defendant's own testimony indicates that plaintiff unequivocally responded "yes" in March when he asked if she was buying the house; although plaintiff said that she would like to do so after she sold a house she had recently listed, she never gave any indication that the purchase would be delayed beyond the end of the 36-month period. And she subsequently made additional attempts to arrange with defendant a time and place to purchase the property, to no avail.

The trial court's factual findings were not clearly erroneous. *Harbor Park*, 277 Mich App at 130. Moreover, we agree with the trial court's legal conclusion that plaintiff did her part to exercise her option to purchase, which triggered performance requirements from defendant if the purchase was to be accomplished. Indeed, one cannot make a "purchase" as a solo activity—there must be at least one buyer and seller, who generally arrange a transfer of funds for the property sold. As the trial court properly found, it was defendant's own conduct, not plaintiff's, that prevented the completion of the purchase. A party to a contract may not prevent or render impossible performance by the other party and then assert that nonperformance as a claim or defense. See *Harbor Park*, 277 Mich App at 131 ("promisors[] cannot avoid liability on the contract for the failure of a condition precedent where they caused the failure of the condition"); *Kiff Contractors, Inc v Beeman*, 10 Mich App 207, 210; 159 NW2d 144 (1968).

Additionally, we disagree with defendant's contention that the option required that full payment of the purchase price be made before the expiration of the 36-month period. The option, by its language, does not require a tender of the complete purchase price by a certain date or in a certain manner. When a contract is silent as to a time for performance or payment, the law will imply a reasonable time. See *Duke v Miller*, 355 Mich 540, 543; 94 NW2d 819 (1959). Moreover, when the terms of an option to purchase real estate do not require the payment of purchase money to accompany the exercise of the option, it can be read as merely requiring "that notice be given of the exercise of the option and leave the matter of the payment of the purchase money to be thereafter settled as in the case of the ordinary executory contract of sale." *Catsman v Ester*, 8 Mich App 563, 567; 155 NW2d 203 (1967), quoting 25 Callaghan, Michigan Civil Jurisprudence, § 9, pp 10, 11. We agree with the trial court's legal conclusion that the terms of the option do not, on their face, require plaintiff to tender the complete purchase price to defendant before the expiration of the 36-month period. *Harbor Park*, 277 Mich App at 130.[4]

---

[4] Defendant's string-citation to *Bergman v Dykhouse*, 316 Mich 315; 25 NW2d 210 (1946), for the general proposition that an enforceable contract does not exist when the conditions of an option are not met, does not alter our analysis. The option in *Bergman* specified a "cash" payment within a specified period of time, making it significant that the option holder never tendered or attempted to tender the purchase price during the relevant time period. *Id.* at 316-317. Moreover, the option-holder in *Bergman* conditioned "closing the deal" on receiving an abstract that he could examine, suggesting that the plaintiff, despite his claim, was not unequivocally exercising his option but was conditioning his acceptance on the receipt of the abstract—a suggestion strengthened by the fact that the plaintiff apparently did nothing else to

Finally, defendant argues that the trial court also erred by dismissing his slander-of-title and eviction counterclaims. We disagree. The trial court dismissed defendant's counterclaims because it had already determined that plaintiff was entitled to specific performance. We affirm that decision and therefore, for the same reasons as given the trial court, affirm the dismissal of defendant's counterclaims.

Affirmed.

/s/ Jane E. Markey
/s/ Mark T. Boonstra

---

pursue the matter, at least based on the limited facts set forth in the opinion. In this case, by contrast, the record shows that plaintiff repeatedly sought to arrange the sale of the property, within the required time frame, in the usual manner of a real estate closing. Although she also made some inquiries of defendant regarding any liens on the property or setoff amounts, plaintiff was not prohibited by the terms of the option from asking defendant for additional information. We conclude that plaintiff validly exercised her option to purchase, and that it therefore ripened into a binding contract for the purchase of the property. *Le Baron Homes*, 319 Mich at 313, 315. We further find no support in the record for defendant's suggestion that the trial court errantly construed the option as a land contract.